## In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

### Bankruptcy No. 1–91–00100.

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 12, 1993.

Michael Hoge, Office of Gen. Counsel, Seattle School Dist. No. 1, for debtors.

## DECISION ON OBJECTION TO CLAIM OF SEATTLE SCHOOL DISTRICT

BURTON PERLMAN, Chief Judge.

Before us is an objection by Eagle–Picher Industries, Inc. ("EPI") to a late-filed proof of claim filed by the Seattle School District ("Seattle"). At a pretrial conference, the parties agreed that the facts are undisputed, and that EPI's objection could be resolved based on memoranda already filed and post-conference memoranda. The pleadings are now closed, and the matter is ripe for decision pursuant to Fed.R.Civ.P. 12(c) (made applicable in bankruptcy by Federal Bankruptcy Rule of Procedure 7012(b)). The issue to be resolved is whether, as a matter of law, the late-filed claim of Seattle should be allowed.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. §§ 157(b)(2)(A) and (B).

The facts are as follows. EPI and various subsidiaries filed Chapter 11 petitions on January 11, 1991. On June 11, 1992, we entered an order, according to our authority under Bankruptcy Rule 3003(c)(3), setting the deadline, or bar date, as September 30, 1992, for filing asbestos-related claims.[1] Pursuant to an extensive notice program, EPI sent out thousands of proofs of claim to potential claimants and their attorneys. EPI sent one such proof of claim to Seattle on June 23, 1992. Seattle's claim, like that of the other potential claimants, was scheduled as disputed, contingent and unliquidated. Seattle accordingly was required by Code § 1111(a) and Bankruptcy Rule 3003(c)(2) to file a proof of claim to be eligible for participation in plan distribution.[2] Seattle, however, filed its proof of claim asserting asbestos property damage claims on October 14, 1992, approximately two weeks after the bar date.

EPI filed its objection to the claim, seeking an order disallowing it because of its

---

1. Federal Rule of Bankruptcy Procedure 3003(c)(3) provides:

   The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

2. 11 U.S.C. 1111(a) provides:

   A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.
   Federal Rule of Bankruptcy Procedure 3003(c)(2) provides:
   Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or·unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; and creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

lateness. In its response to EPI's objection, the School District stated as its reason for its tardy filing as follows:

[T]he District's overworked and underfunded facilities staff prepared a comprehensive and good-faith claim within the time available, given other duties and priorities ...

Seattle also contends that allowing its claim would not prejudice debtor. In its reply to Seattle's response, EPI does not deny that allowing the claim would be prejudicial. EPI instead argues that Seattle had not demonstrated "excusable neglect" since it was within Seattle's control to file its claim timely.

As directed by our pretrial order, the parties submitted additional memoranda. These memoranda enabled the parties to assess their positions in light of the Supreme Court decision of *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which was issued after the pretrial conference in this matter. The *Pioneer* decision sets forth the prevailing legal standard for allowing late-filed claims. In a 5–4 decision, the Court ruled that late-filed claims could be allowed if they were late because of the creditor's excusable neglect pursuant to Bankruptcy Rule 9006(b)(1). The Court held that excusable neglect was a flexible standard not limited to circumstances beyond the control of the filer, as several courts of appeals had held, but also included situations in which the failure to file timely was attributable to negligence. *Id.* at —— – ——, 113 S.Ct. at 1494–98. The Court observed that since Congress did not define the parameters of excusable neglect, that concept necessarily embraced equitable considerations, including all relevant circumstances of each case. *Id.* at ——, 113 S.Ct. at 1498. Such circumstances, the Court held, include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including

whether it was in the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (citing *In re Pioneer Investment Services Co.*, 943 F.2d 673, 677 (6th Cir.1991)).

In reaction to the Supreme Court decision, EPI observed that the Supreme Court, in recognizing an "excusable neglect" standard as one factor in determining whether to allow late-filed claims, had described a range of possible explanations for claim lateness. At one end of the spectrum, parties miss bar dates because of matters beyond their control, while at the other end, parties merely "flout" the deadline. EPI Supplemental Memorandum in Support of Objection to Claim of the Seattle School District, at 2–3 (quoting *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1494). EPI contends that Seattle flouted our bar date order, and that Seattle's behavior could not be characterized as excusable neglect.

In its post-hearing memorandum, Seattle merely states that the minimal length of delay and potential impact of allowance on judicial proceedings, combined with the good faith of claimant and counsel and the lack of prejudice to EPI, weigh in favor of allowing its late-filed claim. We disagree.[3]

As the Supreme Court in *Pioneer* asserted, whether to allow late-filed claims is an equitable decision. *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1498. Accordingly, we view the factors set forth in *Pioneer* as non-exclusive, non-formulaic guideposts. As such, the weight given to the various factors must depend on the facts of each particular case. In this instance, allowing the claim would not prejudice EPI nor result in any delay in the administration of the case, since no plan of reorganization has been confirmed, nor has one yet been proposed. *Cf. In re Dietz*, 136 B.R. 459, 469 (Bankr.E.D.Mich.1992) (dicta stating that undue prejudice which might justify barring amended claim would involve irrevocable change in position or detrimental

---

**3.** We also note that not only did Seattle file a late claim in this case, its post-hearing memorandum was filed past the date established at the hearing. While this cannot be a factor in our decision, this additional non-observance of a court order reflects at best a lackadaisical attitude by Seattle of its legal obligations in this case.

reliance on status quo). Further, the length of the delay and its potential impact on judicial proceedings favors allowance of the claim. The two week lateness of the claim is minimal, and allowing the claim would not affect the administration of this case. *See In re Dix*, 95 B.R. 134, 138 (Bankr. 9th Cir.1988). Thus, the first two factors favor allowing the claim.

■ Other factors, on the other hand, militate against allowance. Seattle gives no reason for its tardy claim, other than that its "overworked and underfunded facilities staff prepared a comprehensive and good-faith claim within the time available, given other duties and priorities." That excuse implies that following our bar date order was not an especially high priority. Such an expression of indifference to court orders does not favor parties seeking determinations based on equity.

Further, it cannot be disputed that the ability to file a timely claim was well within the reasonable control of Seattle. Seattle has furnished neither argument nor documentary evidence to suggest the contrary. *See In re Chateaugay*, 1993 WL 127180, 1993 U.S. Dist. LEXIS 5302 (S.D.N.Y. Apr. 22, 1993) (post-*Pioneer* decision affirming bankruptcy court disallowance of late-filed claim where neglect was result of claimant's own internal procedures). Finally, Seattle received sufficient notice of the bar date. EPI mailed the bar date notice package to Seattle on June 22, 1992. Assuming that Seattle received the notice sometime around July 1, 1992, it had ample time— three months—in which to file its proof of claim. Thus, Seattle lacks any basis for asserting excusable neglect based on lack of notice. *See In re New York Seven–Up Bottling Co.*, 153 B.R. 21, 23 (Bankr. S.D.N.Y.1993) (excusable neglect exists when failure to file timely proof of claim is beyond control of debtor or when bar date notice is inadequate). *See also Matter of Clear Corp.*, 111 B.R. 20 (Bankr.D.Puerto Rico 1990) (most critical factor in deciding whether to allow late-filed claims is whether creditor received sufficient and reasonable notice of bar date). We therefore hold that Seattle's lack of a valid, documented

excuse for its late claim, its express indifference regarding our bar date order, and ample notice of the bar date, taken together, outweigh the factors favoring allowance. The claim will therefore be disallowed.

Further supporting our decision to disallow the claim is the observation made by EPI in its post-hearing memorandum that the contours of the Supreme Court's decision were shaped by distinctive facts not present in this proceeding. In *Pioneer*, the failure by the creditor's attorney to file timely the proof of claim was excused by the fact that the bar date notice was provided "outside the ordinary course in bankruptcy cases," and that the "peculiar and inconspicuous placement" of the bar date on the notice for the first meeting of creditors. *Id.* —— U.S. at ——, 113 S.Ct. at 1500. In contrast, as EPI observes, the bar date notice in our case was highly publicized pursuant to both a national advertising campaign and a mailing to listed claimants and their attorneys of a package containing our order setting the bar date, notice thereof, and a court approved proof of claim form.

■ Clearly, bar dates must be enforced except in unusual circumstances. The *Pioneer* decision cannot be interpreted as allowing late-filing claimants without valid excuses to disregard the bar date. Such a result would contravene the policy underlying the existence of bar dates, which allow debtors to fix their liabilities with certainty for plan purposes. *See In re Norris Grain Co.*, 131 B.R. 747 (M.D.Fla. 1990) (bar date in chapter 11 cases intended by Congress to promote finality). Seattle has not carried its burden of showing an excuse for neglecting to file a timely claim. *See In re Chateaugay*, 1993 WL 127180, *4, 1993 U.S.Dist. LEXIS 5302, at *18. The objection of EPI will therefore be sustained, and Seattle's claim will be disallowed.