AGRIBANK, Creditor–Appellee,

v.

Wallace LeRoy GREEN; Kenneth Lysle Green and Jeanne JoAnn Green; Forrest Lynn Green and Hazel Arlene Green; and Agri–Tech Farms, a partnership, Debtors–Appellants.

No. 95–4066.

United States District Court, C.D. Illinois.

Nov. 17, 1995.

**984**

Barry M. Barash, Barash Stoerzbach & Henson, Galesburg, IL, for Agri–Tech Farms.

Douglas R. Lindstrom, Mustain Lindstrom & Henson, Galesburg, IL, for Agribank.

### ORDER

McDADE, District Judge.

Before the Court are four interlocutory bankruptcy appeals that have been consolidated on the basis that they involve common issues of law and fact [Doc. # 7]. The bankruptcy judge below allowed Agribank to file untimely claims upon the Chapter 11 estates of: (1) Wallace Leroy Green; (2) Kenneth Lysle Green and Jeanne JoAnn Green; (3) Forrest Lynn Green and Hazel Arlene Green; and (4) Agri–Tech Farms, a partnership formed by the first three appellants named above. The three individual debtors and one partnership appealed from the bank-ruptcy judge's decision on the basis that the bankruptcy court had abused its discretion in allowing Agribank to file its untimely claims. While the appeal was pending ·before this Court, Agribank filed a motion to dismiss the appeal [Doc. # 13]. The Court will now rule on all pending motions.

### BACKGROUND

Wallace, Kenneth, and Forrest Green are equal partners in Agri–Tech Farms ("Agri–Tech"). Agribank, FCB ("Agribank") is the latest version of the Federal Land Bank. In October 1981, Agri–Tech Farms' predecessor gave Agribank's predecessor a real estate mortgage on nine tracts of land. Soon after, the mortgage transaction was restructured into one transaction for eight tracts of land and one for the other tract of land, with the partnership and the three individual partners being contingently liable if a third party, Steffan Farms, failed to pay Agribank.

In 1986, the mortgage on the eight tracts of land went into default. A state court foreclosure action was commenced and a settlement was reached. In May 1989, Steffan Farms defaulted on the one tract of land and another state court foreclosure action was commenced. On April 15, 1994, the state court entered a judgment of foreclosure finding that Steffan Farms owed the sum of $567,423.83 and that Agri–Tech and its individual partners owed $551,578.26 as well as being liable for any deficiency.

On May 13, 1994, Agri–Tech and the three individual partners filed Chapter 11 cases in the bankruptcy court. The notice to creditors set September 26, 1994, as the deadline, or "bar date," for filing proofs of claim and contained the following provision:

> PROOF OF CLAIM. Schedules of creditors have been or will be filed pursuant to Bankruptcy Rule 1007.... Creditors whose claims are not scheduled or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim. A creditor who desires to rely on the

schedules of creditors has the responsibility for determining that the claim is listed accurately....

Agribank's claims were scheduled as "disputed." However, Agribank did not file a claim in any of the cases prior to the September 26, 1994, bar date. On August 3, 1994, the bankruptcy court lifted its automatic stay to permit Agribank to go forward with the foreclosure sale in state court. The sale was completed and on October 27, 1994, the state court approved the report of sale and set the deficiency judgment at $376,280.39. On January 3, 1995, Agribank filed its motions to allow the claim on the debtors' bankruptcy estates.

Agribank made two alternative arguments to the bankruptcy court in favor of allowing its claims to be filed after the September 26, 1994, bar date. First, Agribank asserted that the debtors never filed a motion for an order directing the filing of claims. The bankruptcy court rejected this claim, reasoning that the notice debtors sent out to all the creditors concerning the September 26, 1994, bar date was sufficient to alert Agribank that it had to file its claim by that date.

Second, Agribank argued that "excusable neglect" for its late filing existed under Bankruptcy Rule 9006(b)(1).[1] The bankruptcy court also rejected this claim, reasoning that neglect requires carelessness while Agribank's "action was voluntarily and knowingly taken. It made a conscious effort to delay the filing of its claims until after the foreclosure sale and the claim date had run. A deliberate decision not to file a proof of claim does not constitute 'excusable neglect.'"

However, the bankruptcy court ultimately found in Agribank's favor utilizing the standard set out in Bankruptcy Rule 3003(c)(3).[2] The bankruptcy court reasoned that "[a] number of courts have held that the 'for cause shown' standard explicitly provided for in Rule 3003(c)(3) is not equivalent to the analysis of 'excusable neglect' under Rule 9006(b).... The courts have accorded a narrower construction to the phrase 'excusable neglect' than the 'for cause shown' standard, refusing consideration of factors such as prejudice to the debtor or the effect upon other creditors." The bankruptcy court also noted that while the Supreme Court's recent decision in *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), may have narrowed that distinction, that decision "is limited to an analysis under Rule 9006(b), and does not preclude an examination of the extension of time for filing a proof of claim 'for cause shown' under Rule 3003."

The bankruptcy court's "chief consideration" under the "for cause" analysis was that the debtors had misclassified Agribank's claim as "disputed" when in fact, the claim had been reduced to a judgment in the state foreclosure action and was not in dispute. Section 1111(a) of the Bankruptcy Code provides that only claims that are "disputed, contingent, or unliquidated" need be filed in a Chapter 11 action. 11 U.S.C. § 1111(a). The bankruptcy court reasoned that because the claim was really undisputed, this misclassification constituted "cause" to permit the late filing of Agribank's claims.

The bankruptcy court further reasoned that the debtors had failed to appeal the final decision of the state court and instead "sought another bite of the apple" in the bankruptcy court. Moreover, the bankruptcy case was in the early stages of reorganization and no great prejudice would result to

---

1. Rule 9006 provides:
   (b) Enlargement
      (1) In general
   Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

2. Rule 3003(c)(3) provides: "The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."

the debtors by allowing Agribank to file its claims. The bankruptcy court also rejected the debtors' argument that Agribank's late filing has led to harmful tax consequences for them. The debtors sought and received an interlocutory appeal to this Court on the bankruptcy court's ruling.

## ANALYSIS

### Standard of Review

■ The Court reviews the bankruptcy court's factual findings for clear error. *In re Yonikus*, 996 F.2d 866, 868 (7th Cir.1993). However, the bankruptcy court's legal conclusions are reviewed *de novo*. *Id.*

### Agribank's Motion to Dismiss the Appeal

■ One of the individual partners of Agri–Tech passed away while this consolidated appeal was pending. On this basis, Agribank filed a motion to dismiss Agri–Tech's Chapter 11 reorganization proceeding in the bankruptcy court. Agribank asserts that under both Illinois law and the instant partnership agreement, the death of one of the partners dissolves the partnership and triggers dissolution procedures under state law. Thus, Agribank argues that this Court should either dismiss the instant appeal or at least stay any decision pending the bankruptcy court's resolution of this matter because it may render the appeal moot.

The Court disagrees. In addition to Agri–Tech's appeal, there are three individual appeals that are currently before this Court, all of which have been consolidated because of a single common issue—whether the bankruptcy judge erred in allowing Agribank to file its claims upon the appellants' estates in an untimely manner. Even if Agri–Tech's Chapter 11 claim is dismissed (a result which the bankruptcy court has not yet reached), this common issue remains ripe for resolution. In the interest of sound judicial administration, the Court has decided to rule upon the consolidated appeal despite the existence of the motion pending below.

### Merits of the Appeal

■ Appellants assert that the bankruptcy court erred in allowing Agribank to file its claims after the September 26, 1994, bar date. The Court finds that the bankruptcy court erroneously applied the "for cause" standard of Rule 3003(c)(3) to the instant case rather than the "excusable neglect" standard of Rule 9006(b)(1). In *Pioneer*, the Supreme Court explicitly held that "Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter 11 bankruptcies." 507 U.S. at ——, 113 S.Ct. at 1495 n. 4. The Supreme Court reasoned that Rule 9006(b) expressly excepts Chapter 7 cases from the "excusable neglect" standard; however, it makes no such exception for cases falling under Rule 3003(c). Thus, those cases must be subject to the "excusable neglect" standard. *Id.* In other words, the Supreme Court found that "excusable neglect" in Rule 9006(b)(1) *defines* the "for cause shown" language in Rule 3003(c)(3).

In light of this clear holding by the Supreme Court, it was error for the bankruptcy court to find that *Pioneer* "does not preclude an examination of the extension of time for filing a proof of claim 'for cause shown' under Rule 3003." In reaching his decision, the bankruptcy court relied upon cases decided before the Supreme Court's decision in *Pioneer*. See *In re Pettibone Corp.*, 110 B.R. 837 (Bankr.N.D.Ill.1990); *In re Somar Concrete, Inc.*, 102 B.R. 44 (Bankr.D.Md.1989). However, the great weight of authority after *Pioneer* is to the contrary. See, e.g., *In re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101, 105 (7th Cir.1993) ("Justice White, the author of the majority opinion [in *Pioneer*], was careful to point out that the 'excusable neglect' standard covers late filing of proofs of claims in Chapter 11 cases but not in Chapter 7 cases"); *In re De la Cruz*, 176 B.R. 19, 24 (9th Cir.1994) (holding that under *Pioneer*, enlargement under Rule 3003(c) "is subject to excusable neglect."); *In re Sacred Heart Hospital of Norristown*, 186 B.R. 891, 894 (Bankr.E.D.Pa.1995) ("F.R.B.P. 9006(b) allows certain time periods, including the F.R.B.P. 3003(c)(3) bar date, to be extended where the failure to timely act 'was the result of excusable neglect.' "); *In re Aargus Polybag Co., Inc.*, 172 B.R. 586, 589 (Bankr.

N.D.Ill.1994) ("The meaning of 'cause' [in Rule 3003(c)(3)] is elaborated in Rule 9006(b)(1)").

This disposition of the matter does not end the Court's inquiry, however, because the Court must evaluate whether the bankruptcy court correctly analyzed Agribank's claim under the "excusable neglect" standard. The Court in *Pioneer* established a two-step test for determining "excusable neglect" under Rule 9006. First, the movant must show that its actions constituted "neglect." Neglect can be established either by (1) circumstances beyond the movant's reasonable control; or (2) the movant's inadvertence, mistake or carelessness. 507 U.S. at ——–——, 113 S.Ct. at 1494–95. If neglect is shown, then the movant must prove that the neglect was "excusable." This entails a balancing test which may include the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (5) whether the movant acted in good faith. *Id.* at ——, 113 S.Ct. at 1498. These factors are nonexclusive; the test requires an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Id.*

The bankruptcy court below found that the "excusable neglect" requirement had not been satisfied under *Pioneer* because Agribank's "action was voluntarily and knowingly taken. It made a conscious effort to delay the filing of its claims until after the foreclosure sale and the claim date had run. A deliberate decision not to file a proof of claim does not constitute 'excusable neglect.'" This Court cannot say that the bankruptcy court's factual finding regarding the voluntariness of Agribank's late filing was clearly erroneous. Thus, the only question that remains is whether a deliberate decision to not file can ever constitute "excusable neglect."

In *Pioneer,* the Supreme Court held:

The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for our purposes, "to leave undone or unattended *esp[ecially] through carelessness.*" Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Id.* at ——, 113 S.Ct. at 1495 (internal citation omitted). *Pioneer* made this point in the context of showing that "excusable neglect" encompasses simple negligence as well as factors beyond the party's control. The Supreme Court reasoned that employing a more flexible definition of "excusable neglect" accords with the purposes of Chapter 11 which "provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." *Id.*

The Supreme Court also set up a spectrum of possible explanations for a party's failure to comply with a court-ordered filing deadline:

At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention. At the other, a party simply may choose to flout a deadline. In between lie cases where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence.

From this language, it appears that there are indeed rare cases in which even a party's deliberate choice not to abide by the deadline may constitute "excusable neglect."

Most cases after *Pioneer*, however, have held that where a party's actions are deliberate, the party's late filing cannot constitute "excusable neglect." For instance, in *In re New York Seven–Up Bottling Co., Inc.*, 153 B.R. 21, 22 (Bankr.S.D.N.Y.1993), the claimants did not file a timely claim because they believed, based on conversations with the debtors, that the debtors did not dispute their claims.[3] However, the bankruptcy court found that the claimants' claims were properly listed as "disputed" on the debtor's schedules and that proper notice of this fact had been sent to the creditors. *Id.* at 23. Thus, the bankruptcy court held that the claimants' late filing was not justified by excusable neglect. *Id.*

Likewise, in *In re Eagle–Picher Indus., Inc.*, 158 B.R. 713, 716 (Bankr.S.D.Ohio 1993), the claimants explained that its "overworked and underfunded facilities staff prepared a comprehensive and good-faith claim within the time available, given other duties and priorities." The bankruptcy court found that such an excuse implied that following the bankruptcy court's order "was not an especially high priority" and that "[s]uch an expression of indifference to the court orders does not favor parties seeking determinations based on equity." *Id.* The bankruptcy court further determined that "the ability to file a timely claim was well within the reasonable control of [the claimant]." *Id.* Thus, because the claimant had received sufficient notice of the bar date, the bankruptcy court found that the claimant's lack of a "valid, documented excuse for its late claim" outweighed the equitable factors in its favor. *Id.*

In *In re Dauer*, 165 B.R. 146, 148 (Bankr. D.N.J.1994), the claimant argued that it filed an untimely proof of claim in a Chapter 7 case within days of discovering a favorable jury verdict for the debtors because it then realized that it could collect a dividend on its unsecured claim. The bankruptcy court held that "an unsecured creditor's mistaken belief that a case is a no asset case does not alter the deadline for filing a proof of claim, where the notice plainly requires the filing of a claim." *Id.* The bankruptcy court reasoned that "having made a deliberate decision not to file a timely proof of claim," the late-filed claim would be disallowed. *Id.* at 149 *citing In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir.1988); *In re Central Equip. & Serv. Co.*, 61 B.R. 986 (Bankr.N.D.Ga.1986). *See also In re Bicoastal Corp.*, 176 B.R. 966 (Bankr. M.D.Fla.1994) (holding that untimely filing would not be allowed in a Chapter 11 case where it was "evident that the failure to act by [the claimant] has nothing to do with neglect but it was a conscious business decision at that time not to pursue [the debtor].").

In *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 895 (Bankr.E.D.Pa.1995), the court found:

> We do not believe that an approach which declines to liberally grant extensions of claims bar dates is warranted, in light of *Pioneer*. Rather, we believe that the full equities of the parties must be considered, and that the initial factors cited by the *Pioneer* court, e.g., the danger of prejudice to the debtor and potential adverse impact of allowing a late claim on the debtor's reorganization process, are the polestars. The length of the delay and the presence of a claimant's conscious, tactical reason for the delay are also factors, but should be relevant largely in the context of prejudice to the debtor and its reorganization process.

The court held in that case that the lack of prejudice to the debtor from the late filing "goes a long way towards winning the day for the [claimant] in this matter." *Id.* at 897. However, the court was careful to point out

---

**3.** As noted above, only claims that are "disputed, contingent, or unliquidated" need be filed in a Chapter 11 action. 11 U.S.C. § 1111(a).

that there was "no evidence of any conscious or tactical decision" by the claimant to file a late claim. *Id.*

This Court finds that Agribank's deliberate choice to not file its claims on the debtors' estates prior to the September 26, 1994, bar date does not constitute excusable neglect under Rule 9006. The four factors set out by the Supreme Court in *Pioneer* are useful "guideposts for determining what sorts of neglect will be considered 'excusable'." 507 U.S. at ——, 113 S.Ct. at 1498. However, the prerequisite to using such a balancing test is a finding that the claimant's behavior constitutes "neglect" as that term is understood in its "ordinary, contemporary, [and] common meaning." *Id.* at ——, 113 S.Ct. at 1495 *citing Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The Supreme Court defined "neglect" to mean "to leave undone or unattended to *esp[ecially] through carelessness." Id. citing* Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). Such a definition virtually excludes any possibility that a late filing which is the result of a party's deliberate choice can constitute "neglect."

Even if there are some rare instances where a deliberately late filing can constitute neglect, *see id.* at ——, 113 S.Ct. at 1494, the instant case is not one of them. The bar date here was September 26, 1994. Agribank admits that it deliberately waited to file its proof of claims until January 3, 1995, reasoning that until the foreclosure sale closed in the state court, "Agribank was not in a position to definitively state what the exact amount of its unsecured claim would be in each case." Thus, Agribank waited until after the foreclosure sale so that "its claim did not have to be amended."

But this is not the law under the Bankruptcy Code. Bankruptcy Rule 3003(c)(2) clearly states:

> Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; *any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purpose of voting and distribution.*

(emphasis added). It is undisputed that Agribank received a notice entitled: "NOTICE OF COMMENCEMENT OF CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, MEETING OF CREDITORS, AND FIXING OF DATES." The notice clearly stated, "Creditors whose claims are not scheduled or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim." The notice further provided that the bar date for filing proof of claims was September 26, 1994. Moreover, the schedule of unsecured creditors attached to the Chapter 11 petition clearly listed Agribank's claim as "disputed." Despite receipt of such notice and the law regarding disputed claims, Agribank deliberately chose to wait until the foreclosure sale had been completed in late December 1994 before filing its claim.

Agribank reasoned that its claim was undisputed because the state court had entered a judgment of foreclosure in its favor on April 15, 1994. However, whether that judgment was final or not was a disputed factual issue at the time of the debtors' Chapter 11 bankruptcy filing. Contrary to Agribank's assertion that the debtors were responsible for properly scheduling the claims, it was Agribank's affirmative obligation to contest its "disputed" status to the bankruptcy court prior to the September 26, 1994, bar date by either filing a proof of claim or at least bringing it to the bankruptcy court's attention. It is the *creditor's* responsibility to verify the accuracy of his claim as listed on the debtor's schedules. Advisory Committee Note to Bankruptcy Rule 3003(c); *In re Analytical Sys., Inc.,* 933 F.2d 939, 941 (11th Cir.1991); *see also In re Chicago, Rock Island and Pacific R. Co.,* 788 F.2d 1280, 1283 (7th Cir.1986) (holding that it was enough that trustee mailed a proof of claim form to the creditor and that "[i]t was not his duty to write or call her again, to urge her to sue him."); *In re Nutri\*Bevco, Inc.,* 117 B.R. 771, 789 (Bankr.S.D.N.Y.1990) ("[W]e do not view it to be the debtor's duty to urge its creditors to file proofs of claims after adequate notice has been provided to them."). The notice sent to Agribank even

explicitly stated, "A creditor who desires to rely on the schedules of creditors has the responsibility for determining that the claim is listed accurately."

Even though the bankruptcy court eventually decided that the state court judgment was final and appealable and that Agribank's claims should not have been listed as "disputed" in the schedules, this ruling was made long after the bar date had passed and only under the bankruptcy court's erroneous analysis regarding the "for cause shown" standard of Rule 3003(c)(3). Such a retroactive vindication of Agribank's argument does not excuse its failure to file a timely proof of claim in response to the debtors' assertion on the schedule that the claim was "disputed." Agribank unilaterally decided that its claim was undisputed on the basis that only the amount of the deficiency award remained in dispute until the foreclosure sale had been completed. However, the notice explicitly stated that creditors "whose claims are listed as disputed, contingent, or unliquidated *as to amount*" had to file their claims prior to the bar date. Moreover, Agribank had no way of being certain whether the state court's order was final and appealable or could still be disputed.[4] And even if it did, Agribank had a duty to abide by the dictates of the Bankruptcy Code and the terms of the notice. Instead, Agribank deliberately flouted the bar date established by the bankruptcy court

and chose not to file its proof of claim in a timely fashion despite the bankruptcy court's explicit order that it do so.

Agribank argues that equitable principles support a finding of excusable neglect in this case because the Bankruptcy Code rests on a foundation of equity. *In re Stavriotis,* 977 F.2d 1202, 1205 (7th Cir.1992). However, it is also true that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988); *In re Longardner & Assocs., Inc.,* 855 F.2d 455, 462 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). A chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the debtor's estate within a limited period. *In re Best Prods. Co., Inc.,* 140 B.R. 353, 356 (Bankr. S.D.N.Y.1992).

The bar order in a Chapter 11 case serves the important purpose of enabling the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. *Id.* Thus, equity cannot allow the deliberate flouting of the bar date by a credi-

---

4. At the time that the schedules were developed and the notices were sent out, the debtors had a viable argument that the claim was disputed because the state court had not yet entered a final judgment as to the amount of the deficiency. While the state court entered summary judgment in favor of Agribank on April 15, 1994, the court did not state that there was "no just reason for delaying an appeal." Such language is required under Illinois law for a judgment of foreclosure to be final and appealable prior to the foreclosure sale and actual distribution of proceeds. Illinois Supreme Court Rule 304(a); *Charter Bank v. Eckert,* 198 Ill.App.3d 499, 144 Ill.Dec. 693, 695, 555 N.E.2d 1212, 1214 (5th Dist.1990); *Marion Metal & Roofing Co., Inc. v. Mark Twain Marine Indus., Inc.,* 114 Ill.App.3d 33, 69 Ill.Dec. 759, 761, 448 N.E.2d 219, 221 (5th Dist.1983). Moreover, on October 27, 1994, when the state court issued an Order Confirming Report of Sale, the court stated that it "reserves ruling on the issue of entry of a judgment for the deficiency ..." Thus, even at that point, a deficiency judgment had not yet been entered.

The bankruptcy court never decided whether the April 15, 1994 order or the October 27, 1994 order constituted the final and appealable judgment in this case. Therefore, this Court makes a *de novo* factual finding that the October 27, 1994 order was the final and appealable order of the state court. As opposed to the April 15, 1994 order, the October 27, 1994 order did contain the language of Supreme Court Rule 304 that, "[t]here is no just cause for delay in the enforcement of or appeal from this Order." Because the order was not final until October 27, 1994, there was no way that the debtors could have appealed the April 15, 1994 decision. Therefore, the Court finds that the debtors properly scheduled the claims as "disputed" because they still had the right to appeal at that point. The fact that the debtors did not actually appeal the October 27, 1994 order is irrelevant because by that time, the September 26, 1994 bar date had already passed and the debtors had no reason to fear that Agribank would bring any further claims against them.

tor who unilaterally believes that its claims are undisputed when the schedules clearly list them as "disputed." Any other result would encourage claimants to willfully ignore the provisions of Rule 3003(c)(2) and to rely upon the flexibility of the excusable neglect provision to allow untimely filing of claims despite clearly established bar dates set by the bankruptcy court. The Court believes that Congress did not draft the excusable neglect provision of Rule 9006 with any such intention. Thus, the Court finds, as the bankruptcy court found below, that no excusable neglect exists here where Agribank's actions were voluntary and deliberate.[5]

### CONCLUSION

IT IS THEREFORE ORDERED that Agribank's Motion to Dismiss the Appeal [Doc. # 13] is **DENIED.**

IT IS FURTHER ORDERED that the decision of the Bankruptcy Court must be **REVERSED** and that Agribank's Motion to Allow Claim be **DENIED** as untimely under Bankruptcy Rules 9006(b)(1) and 3003(c)(3). This matter is remanded to the Bankruptcy

5. The Court notes that even though it need not reach the issue of whether Agribank's deliberate actions were "excusable" under the test set out in *Pioneer,* the Court finds that Agribank would also fail such a test. The Supreme Court set out the following factors to consider: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. The third factor clearly weighs against Agribank because the ability to file was always within its control. Moreover, Agribank did not act in good faith when it ignored both the provisions of the Bankruptcy Code and the bankruptcy court's notice of the September 26, 1994, bar date. The second factor weighs in favor of Agribank because the delay was not especially lengthy and reorganization proceedings had not yet begun when Agribank attempted to file its claims.

However, as to the first factor, the bankruptcy court failed to take into account the fact that the debtors relied upon Agribank's failure to timely file as a reason for triggering certain contingent tax liabilities. The debtors intended to use the money saved from Agribank's nonfiling in order to pay the Internal Revenue Service ("IRS"). If the debtors had known that Agribank was going to file a claim, they could have simply rolled the 1994 taxes over to the next year. By Agribank

Judge for any further proceedings necessary to terminate Agribank's claims.

failing to file its claim until January 2, 1995, the debtors had irrevocably committed themselves to selling the 1994 crop in 1994, generating a contingent tax which they believed they could pay. While this alone would not produce sufficient prejudice to the debtors, there are other extenuating circumstances at work here.

Section 1129(a)(9)(A) of the Bankruptcy Code provides that a bankruptcy reorganization plan will only be confirmed if all post-petition taxes are paid in cash. 11 U.S.C. § 1129(a)(9)(A). Under Illinois partnership law, partnership debts to third party creditors must be paid before there is any distribution to the individual partners. 805 ILCS 205/40 (1993). Thus, if Agribank is allowed to file its claim, Illinois law would require the debtors to pay Agribank prior to paying out their individual tax liabilities. If Agribank is paid first, there will be insufficient cash left in the estate to pay the post-petition taxes. As a result, § 1129(a)(9)(A) would pose an absolute bar to the confirmation of the debtors' reorganization plan. Moreover, the individual partners would be left with the taxes generated by the income of the partnership. This constitutes enough prejudice to weigh in favor of the debtors.

Thus, because three of the four factors weigh strongly against Agribank, the Court would not find any "excusable neglect" here even if Agribank's behavior could be considered neglect.