In re PENNSYLVANIA TRUCK
LINES, INC., Debtor.

Bankruptcy No. 92–12370DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 29, 1995.

---

Robert M. Bovernick, Adelman, Lavine, Gold and Levin, Philadelphia, PA, for Debtor.

Jeffrey Kurtzman, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, for Heavy Machines, Inc.

Alan R. Gordon, Philadelphia, PA, for Creditors' Committee.

Francis J. Lawall, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Consolidated Rail Corp.

Thomas R. Straus, Steubenville, OH, for Joseph J. Cortez, Jr., movant in Motion decided on August 2, 1995.

Peter Santos, Dickey, McCamey and Chilcote, P.C., Pittsburgh, PA, for Reorganized Debtor in Cortez matter.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

### OPINION

DAVID A. SCHOLL, Chief Judge.

#### A. INTRODUCTION

The instant dispute boils down to requiring this court to again, shortly after our Opinion in *In re Sacred Heart Hospital of Norristown,* 186 B.R. 891 (Bankr.E.D.Pa.1995), apply the United States Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which liberalized the applicable rules in this Circuit for allowing late-filed proofs of claim. Finding that the late claim in issue was due to a lengthy delay which had no satisfactory justification; that a provision of a confirmed plan for which the claimant voted re-emphasized the finality of the bar date as a contractual undertaking; and that allowance of the claim would result in a strong potential for prejudice to the reorganized Debtor and creditors entitled to a distribution from the Debtor's estate, the request to file the new late claim is denied.

#### B. FACTUAL AND PROCEDURAL HISTORY

Despite the long pendency of this bankruptcy case, the facts of the instant contested matter can be stated fairly briefly. On or about August 1, 1990, and December 1, 1990, PENNSYLVANIA TRUCK LINES, INC. ("the Debtor") and Heavy Machines, Inc. ("HMI") entered into certain agreements ("the Agreements"), pursuant to which HMI agreed to perform maintenance services on certain equipment owned by the Debtor. Under the Agreements, the parties agreed to indemnify each other from losses arising from their business relationship.

On April 16, 1992, the Debtor filed a voluntary petition in this court for reorganization pursuant to Chapter 11 of the Bankruptcy Code. On July 17, 1992, a September 1, 1992, bar date for filing proofs of claim was established. Accordingly, on August 10, 1992, HMI timely filed its proof of claim relating to the monies due and owing by the Debtor to it for services rendered prior to the commencement of the Debtor's Chapter 11 case, in the amount of $60,815.65.

On September 22, 1993, this court entered an Order confirming the Debtor's Modified Second Amended Plan of Reorganization ("the Plan"). With respect to the filing of claims, the Plan provided, *inter alia,* as follows: (1) "Personal Injury Claims" were defined as including claims "arising from" personal injuries, specifically embracing the

claims of "Entities entitled to contribution or indemnity from the Debtor in connection [sic] or arising out of such Personal Injury Claims." Plan, § 3.6; (2) Personal Injury Claims not filed by the bar date were "deemed disallowed and forever barred" and the holder was deemed not entitled to distribution of assets or insurance proceeds "to the extent not inconsistent with applicable non-bankruptcy law." Plan, § 4.6; and (3) in § 18.2 of the Plan, entitled "Late Filed Claims," it was provided that, if a motion to extend the bar date were filed on or before the Effective Date of the Plan, defined as the later of twenty (20) days after (a) the confirmation order; or (b) the order of this court approving the Debtor's settlement Agreement with Consolidated Rail Corp. ("Conrail"), became final, which apparently triggered an Effective Date of November 29, 1993,[1] no objection to any such motion would be filed. However, it was reiterated that, if no motion to extend the bar date were filed by the Effective Date, "the claim of such holder shall be forever barred." The Late Filed Claims section was apparently added to the Plan because the Debtor observed, prior to confirmation, that several "personal injury claimants" had not received notice of the bar date, and the Debtor recognized the adverse due process ramifications of disallowing claims to such parties. *See, e.g., In re West Coast Video Enterprises, Inc.,* 174 B.R. 906, 909 (Bankr.E.D.Pa.1994).

Also relevant are the unusual provisions of the Plan relative to the rights of the Debtor's insurance carrier, American Insurance Group ("AIG"), whose coverage of the Debtor apparently included certain self-insuring features. AIG was allowed, under § 4.5 of the Plan, a claim of $1.7 million, but this figure was subject to adjustment upward, upon motion of AIG, or downward, if the claims paid by AIG exceeded or were less than certain amounts. The Plan, at § 8.1, contemplated payment from seventy-five (75%) percent of the Debtor's operating profits and all of its recoveries from causes of action and asset distributions to fund insured claims, including payments to AIG.

According to Stephen M. Snyder, Esquire, HMI's Massachusetts counsel and its sole witness at the hearing on the Motion in issue, two former employees of the Debtor were injured on the job in 1990 and 1991, respectively. In December 1992, both of these former employees of the Debtor filed suits against HMI in the Superior Court for the Commonwealth of Massachusetts ("the Mass. Court;" the actions are referenced as "the Mass. Suits"). In June 1993 and June 1994, respectively, again per Snyder, HMI, as a third-party plaintiff, filed third-party complaints against the Debtor in these actions. HMI's counsel on the instant Motion has indicated that its sole purpose for naming the Debtor was to seek contribution from AIG under the policy which was in effect at the time of the events leading to causes of action which form the basis for the Mass. Suits. On November 1, 1994, and July 27, 1995, respectively, the Debtor filed motions for summary judgment in its favor in the Mass. Court, contending that HMI's claims against it were pre-petition claims discharged in the Debtor's bankruptcy case. These motions remain pending due to certain delays in administration of the Mass. Suits.

This court was entirely unaware of the Mass. Suits when, on August 2, 1995, we entered a Final Decree in this case and an Order directing, *inter alia,* that, in due course, this case would be closed, subject to reopening if the results of any pending matters would affect the administration of the case. Although the case had in fact not been closed by that date, on September 6, 1995, apparently aware of the Order of August 2, 1995, HMI filed a Motion for an Order Pursuant to 11 U.S.C. § 350(b) and Federal Rule of Bankruptcy Procedure 5010 Reopening Debtor's Chapter 11 Case ("the Motion"). On October 3, 1995, the Debtor filed an Answer and Affirmative Defenses to the Motion, which was initially scheduled for a hearing on October 11, 1995. After a second continuance of the hearing until November 1,

---

1. The Plan was confirmed on September 23, 1993. This court's Order approving the Conrail settlement Agreement became final 60 days after it was affirmed by the Court of Appeals on Sep-

tember 8, 1993. 8 F.3d 812. Twenty days thereafter fell on Saturday, November 27, 1993. The next business day was November 29, 1993.

1995, we entered an Order scheduling this matter for a hearing on a must-be-tried basis on November 8, 1995. After the hearing on that date, we allowed the parties until November 17, 1995, to simultaneously submit briefs supporting their respective positions.

The witnesses at the brief hearing were Snyder, on HMI's behalf, and, on the Debtor's behalf, a member of the firm of the Debtor's counsel, Barry D. Kleban, Esquire; and the Debtor's president and general manager, Richard F. Jacobs. Snyder testified that HMI failed to file a proof of claim in support of its indemnity claim as a result of his consultation with his local associate counsel, John Hartzell, in September 1993, after Hartzell allegedly spoke to Kleban. Snyder also testified that, under Massachusetts law, HMI's claim for indemnity against the Debtor would not accrue until HMI were itself found liable to the injured employees. When asked by the court whether HMI wished to file a late claim, Snyder testified that it did not, unless it was procedurally necessary to obtain the relief HMI was seeking. By way of contrast, as we read HMI's brief, we believe that amendment of its claim was essentially the only relief actually sought by it.

Kleban testified regarding what he claimed was a very brief telephone conversation with Hartzell, in which he informed Hartzell that the bar date had passed and that Hartzell might want to consult the decision in *In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir. 1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), to determine whether HMI could assert an administrative claim. Jacobs testified that the unanticipated allowance of HMI's claim at this juncture would adversely impact both the Debtor's operations and the claims of creditors by increasing AIG's claim.

### C. DISCUSSION

#### 1. HMI'S CONTRACTUAL INDEMNITY CLAIM IS A CONTINGENT, PRE–PETITION, AND THEREFORE DISCHARGEABLE CLAIM.

■ The Third Circuit's *Frenville* decision, referenced *supra*, is famous—and infamous in the view of several other courts, *see, e.g., In re Hemingway Transport, Inc.*, 954 F.2d 1, 8–9 n. 9 (1st Cir.1992); and *Grady v. A.H. Robins Co.*, 839 F.2d 198, 201 (4th Cir.1988)—because it holds that a non-contractual indemnification claim accrues only when a right of the indemnitee for payment arises under applicable state law. 744 F.2d at 337. Thus, in *Frenville*, a non-contractual indemnity claim arising from pre-petition events was deemed a post-petition, nondischargeable claim to which the protection of the automatic stay was inapplicable. *Id.*

However, as the Debtor aptly points out, *Frenville* clearly distinguishes a claim based upon "an indemnity or surety contract" from a non-contractual indemnification claim. *Id.* at 336. Of the former the court holds, *id.* at 336–37, that

[w]hen parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement. *See In re THC Financial Corp.*, 686 F.2d 799, 802–04 (9th Cir.1982); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir. (Unit A) 1981) (per curiam). Such a surety relationship is the classic case of a contingent right to payment under the Code—the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event. *See All Media*, 5 B.R. at 133 (footnote omitted).

HMI's instant claim is indisputably a contractual indemnity claim. Therefore, under *Frenville*, HMI's claim is a contingent, pre-petition claim, subject to discharge in the Debtor's bankruptcy case. *Accord, Hemingway Transport, supra*, 954 F.2d at 9 n. 9. The fact that, under Massachusetts state law, HMI's claim may not be deemed to have accrued as of the date of the Debtor's bankruptcy filing is therefore irrelevant. We also agree with the Debtor's observation that, since HMI's indemnity claim against the Debtor must be deemed a pre-petition claim, it cannot be accorded administrative claim status. *See, e.g., In re Philadelphia Mortgage Trust*, 117 B.R. 820, 828 (Bankr.E.D.Pa. 1990).

HMI's present bankruptcy counsel apparently recognized the weakness of any arguments that his client's claims were post-petition and/or administrative claims, because he refrains from making these arguments himself. Meanwhile, Snyder apparently believes in vain that these arguments have some weight. Otherwise, he would have recognized that his testimony regarding the accrual of HMI's cause of action under Massachusetts law was irrelevant.[2]

In any event, this court recognizes that these arguments have no merit and that HMI's only means of preserving any recovery on its indemnity claim against the Debtor's estate is to attempt to assert same as a belated proof of claim.

2. *HMI'S ATTEMPT TO ASSERT AN INDEMNITY CLAIM WHICH IS AN ENTIRELY NEW AND DIFFERENT CLAIM FROM ITS TIMELY CLAIM FOR NON–PAYMENT OF SERVICES PERFORMED CANNOT BE ALLOWED AS AN AMENDMENT TO THE TIMELY CLAIM.*

■ It is well-established that, while "[a]mendments to timely proofs of claim are liberally allowed[,] ... purported amendments will not be permitted if they actually constitute 'new claims.'" *In re Metro Transportation Co.*, 117 B.R. 143, 147 (Bankr.E.D.Pa.1990). *Accord, e.g., United States v. Owens*, 84 B.R. 361, 363 (E.D.Pa. 1988). Thus " 'if a new claim is being asserted subsequent to the bar date, an objection to its filing [as a late claim] must be sustained.' " *Metro Transportation, supra*, 117 B.R. at 147, quoting *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr.E.D.Pa. 1988).

HMI's instant indemnity claim against the Debtor is in no way related to its timely claim for unpaid services rendered to the Debtor. As such, it is a "new claim" which must stand on its own. Therefore, unless HMI is able to argue that the indemnity claim can, without inference to the timely claim which it in no sense amends, be allowed

as a late-filed claim, HMI's indemnity claim must be deemed barred from payment from the Debtor's bankruptcy estate under the Plan.

3. *HMI IS UNABLE TO ESTABLISH THE REQUISITE "EXCUSABLE NEGLECT" REQUIRED FOR ALLOWANCE OF ITS LATE–FILED INDEMNITY CLAIM.*

■ The brief foregoing discussions confine HMI to one argument, *i.e.*, that the late filing of the indemnity claim is permissible because the requisite "excusable neglect" for the late filing of this claim has been established. Although Snyder obviously failed to recognize or acknowledge it, HMI's present counsel appears to properly concede that this is HMI's only argument of substance.

Federal Rules of Bankruptcy Procedure ("F.R.B.P.") 3003(c)(2) and (c)(3) require a Chapter 11 creditor not satisfied with a debtor's listing of its claim as "undisputed" to file a proof claim on or before the court-established claims bar date in order for that claim to be properly asserted against the debtor's estate such that the claimant may share in the distribution proposed by the debtor's plan. However, F.R.B.P. 9006(b) permits the bar date to be extended in situations where the failure to file a timely claim results from "excusable neglect."

The Supreme Court formulated the standard for "F.R.B.P. 9006(b) excusable neglect" in *Pioneer, supra*, 507 U.S. at 394–95, 113 S.Ct. at 1498. There, the Court held that, in making this determination, which the Court felt was an "equitable one," a bankruptcy court must "tak[e] account of all relevant circumstances surrounding the party's omission," including (1) "the danger of prejudice to the debtor;" (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) "whether the movant acted in good faith." *Id.* The Court had earlier explained that "excusable neglect"

---

2. HMI's counsel dutifully references this testimony in his brief, either out of politeness to Snyder or to simply attempt to somehow influence this

court's equitable weighing process with this recitation.

may encompass situations wherein the failure to meet the claims bar filing deadline is attributable to sheer negligence on the part of the claimant. *Id.* at 392–95, 113 S.Ct. at 1497–98.

As noted at the outset of this Opinion at page 332 *supra*, this court had the occasion to apply the *Pioneer* standard in our recent decision in *Sacred Heart, supra*. In that decision, we pointed out, 186 B.R. at 894–95, that *Pioneer* had abrogated the restrictive standards for allowance of late-filed claims for "excusable neglect" previously established by the Third Circuit Court of Appeals in *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911, 914–16 (3d Cir.1991); *In re Vertientes, Ltd.*, 845 F.2d 57, 60–61 (3d Cir. 1988); and *In re Pigott*, 684 F.2d 239, 241–42 (3d Cir.1982). We then proceeded to discuss cases decided after *Pioneer* and enunciated our own interpretation of *Pioneer*. *Id.* at 895–97.

Primary to our analysis of the *Pioneer* standards was consideration of the first and second factors designated in that case, namely, "the danger of prejudice to the debtor and the potential adverse impact of allowing a late claim on the debtor's reorganization process." *Id.* at 895. The secondary *Pioneer* factors, "the length of the delay and the presence of a claimant's conscious, tactical reason for the delay," were recognized as relevant only in the context of the primary factors noted above, *i.e.*, prejudice to the debtor and its reorganizational process. *Id.* The facts of the instant case relevant to the issue of whether the late-filed "new claim" by HMI should be excused can best be characterized as presenting an extremely long and logically unjustified delay, barred by the express terms of the Plan, which, by this time, will have a potentially significant impact on the Debtor's case. Therefore, the instant late filing is deemed "inexcusable."

The claim of $1.7 million allowed to AIG under the Plan may be adjusted upward or downward depending upon actual loss experience and payment history under the policies between AIG and the Debtor. If the total claim amount against the Debtor from the two Mass. Suits exceeded $250,000.00, which is the Debtor's deductible amount under its AIG policy, and if AIG were forced to pay an amount over $250,000.00 ("the Overage"), then AIG would be able to adjust its claim upward by the amount of the Overage. Thus, the effect of allowing HMI's new, late-filed claim on the Debtor's reorganization would be direct, since both the payment of the deductible amount and the additional claim amount accorded to AIG would have to come directly from what otherwise would be the net profits of the Debtor payable to unsecured creditors. Should profits be thereby so depleted as to preclude the Debtor from remaining in operation and the Plan from being carried out, all of the unsecured creditors which timely filed claims in this bankruptcy case would be directly and significantly adversely affected. The danger of prejudice to the Debtor is similarly apparent, since the Debtor's actual survival could be jeopardized if it were no longer profitable. Therefore, if we were to permit HMI to file its new claim, this court could be, in effect, belatedly and almost after the fact of this administration of this case, increasing the Debtor's burden in this bankruptcy, thereby subjecting the Debtor to the risk of failure and leaving the potential result of this case to chance.

■ In contemplation of the severe impact that late-filed claims subject to AIG's coverage could have on the reorganization plan, the Debtor wrote provisions into the Plan which regulated such belated filings. Late claims filed prior to the Effective Date were to be allowed with some degree of liberality. Those filed after the Effective Date were, however, expressly to be disallowed. These Plan provisions were of course subject to the constraints of due process of law, *i.e.*, an unknown or omitted creditor's rights could not be cut off thereby. However, HMI was a known creditor, and its participation as a voting creditor assures that it was in no sense an omitted creditor. Moreover, HMI voted in favor of the Plan. In so doing, it entered into a quasi-contractual relationship with the Debtor to be bound by the Plan's terms. *See, e.g., In re Mall at One Associates, L.P.*, 185 B.R. 1009, 1021–22 (Bankr. E.D.Pa.1995); and *In re St. Mary Hospital*, 155 B.R. 345, 348–49 (Bankr.E.D.Pa.1993). HMI's contractual commitment to be bound

by the Plan's terms cannot be thrust aside simply because it now finds one aspect of its undertaking to be unexpectedly detrimental to its interests.

The facts of this case are quite distinct from those in *Sacred Heart*. First, the time of HMI's delay is much longer and justification for such a delay cannot be found. The late-filed claim of the Borough-creditor in *Sacred Heart* was filed just three and a half months after the bar date and a month prior to the confirmation of the *Sacred Heart* debtor's plan. *See* 186 B.R. at 893. Notably, the Borough's claim filing would have fallen in the pre-effective-date period in which the instant Debtor provided for a liberalized allowance of late-filed claims.

HMI, meanwhile, though presumably aware of the specific Plan provisions regarding indemnification claims, ignored the bankruptcy process in this court for over two years after the initial third-party complaint was filed by the Debtor. It is now over a year since the Debtor filed its initial summary judgment motion in one of the Mass. Suits expressly raising the Debtor's bankruptcy discharge as an issue. The instant motion was in fact filed only after this court had ordered this case to be closed, almost two years after confirmation of the Plan. Administration of several other aspects of the *Sacred Heart* case, in which the claim was filed prior to confirmation, remained in progress when the dispute over the Borough's claim-filing arose.

In *Sacred Heart* we found the Borough's articulated explanation for its late-filed claim, *i.e.*, that it did not discover the debtor's delinquency until after the bar date, to be "dubious." 186 B.R. at 897. However, the Borough's deficiencies were due to the conduct of a Municipal Tax Bureau, whose lay employees expressed significant misunderstandings of the Debtor's obligations in a bankruptcy and the significance of several events therein, and whose control by the Borough was unclear. *Id.* at 897–98.

In the instant case, HMI was represented by both Massachusetts and local *counsel* who apparently either neglected or misunderstood the advice of the Debtor's counsel regarding the status of its indemnity claim.

*Pioneer* establishes that errors of counsel must be attributed to the client. 113 S.Ct. at 1498–99. HMI's present bankruptcy counsel has wisely abandoned the legal theories relied upon by HMI's prior counsel, suggesting that, had HMI consulted counsel versed in bankruptcy law earlier, it would have avoided its current predicament. In sum, the reasons for the late filing were, if anything, more easily preventable than those in *Sacred Heart* and hence the justifications for same was even more dubious than those advanced by the Borough in *Sacred Heart*.

However, the polestar of the *Sacred Heart* decision was our failure to identify any prejudice to the debtor in allowing the Borough's late filing. The *Sacred Heart* debtor had closed its doors and ceased doing business shortly before the bankruptcy filing, and its plan clearly contemplated no more than liquidation of the debtor's assets. 186 B.R. at 893. In this setting, a pre-confirmation late claim filing effected merely a modest redistribution of assets. Thus, we found "no danger of prejudice to the Debtor's interest whatsoever" from allowance of the late-filed claim of the Borough in *Sacred Heart*. *Id.* at 897.

By way of contrast, prejudice to the Debtor, as well as affected creditors, could easily result if we allowed HMI's late-filed claim. The Debtor's very continuation after bankruptcy is a significant distinction, as post-confirmation continuity carries with it a need to maintain an ongoing business relationship with former creditors which was lacking in *Sacred Heart*.

Finally, unlike *Sacred Heart*, we have here a Plan provision addressing late-filed claims and the express acceptance of the Plan by HMI in its casting of its affirmative vote. The instant effort to assert a new, late-filed claim comes long after even the "secondary bar date," *i.e.*, the Effective Date of the Plan. It is simply not equitable to allow HMI to extricate itself from its contractual acceptance of the terms of the Debtor's Plan simply because those terms would bar its own further recovery at this juncture.

For all of these reasons, we conclude that HMI's efforts to "amend" or file a new late

claim on the ground of "excusable neglect" at this juncture are not well-taken and must be denied.

### D. CONCLUSION

■ We have decided that HMI's Motion before us must be denied. Therefore, HMI is precluded from shoring up its claims asserted in the Mass. Suits by actions of this court. We should note that, since we contemplate closing this case immediately upon the expiration of the time to appeal from this decision, post-confirmation issues in administration of the Mass. Suits will remain before the Mass. Court. While we find no inequitable conduct of the Debtor which affects our decision regarding the status of this case, as did the court in a case cited by HMI as grounds for reopening that case, *In re Shondel,* 950 F.2d 1301, 1304–06 (7th Cir.1991), we do note that a bankruptcy discharge does not generally alter the rights of creditors to collect from third party-insurers. *See, e.g., First Fidelity Bank v. McAteer,* 985 F.2d 114, 118 (3d Cir.1993); and *Shondel, supra,* 950 F.2d at 1307. Whether the Mass. Courts can frame relief which satisfies the principle, in light of the unique interplay of the liability of the Debtor over to AIG and the Debtor's discharge, is for that Court to decide.

### ORDER

AND NOW, this 29th day of November, 1995, after a hearing of November 8, 1995, on the Motion of Heavy Machines, Inc. to reopen this case and for other relief ("the Motion"), it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED.

2. Unless a timely appeal from this decision is prosecuted, the Clerk shall proceed to close this case, as directed by our Order of August 2, 1995.