In re METROPOLITAN ELECTRIC
SUPPLY CORP., Debtor.

Harry SHAIA, Jr., Trustee, Plaintiff,

v.

DURRETTE, IRVIN, LEMONS & BRADSHAW, P.C., and Raymond, Colesar, Glaspy & Huss, P.C., Defendants.

Bankruptcy No. 92–33172–S.
Adv. No. 94–3117.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 1, 1995.

506

Frederick W. Gibb, Spinella, Owings & Shaia, Richmond, VA, for plaintiff/Trustee.

Roy M. Terry, Jr., Durrette, Irvin, Lemons & Bradshaw, P.C., Richmond, VA, for defendants.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court on motions for summary judgment by both the plaintiff and the defendants. In the underlying Complaint, the Trustee seeks to recover funds allegedly paid in error to the defendant professional corporations. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

After a hearing, this Court granted the Trustee's Motion for Summary Judgment, directed that certain funds be returned to the

Trustee, and denied the Motion for Summary Judgment filed by the defendants. Upon ruling from the bench, the Court reserved the right to enter a Memorandum Opinion and Order upon notice of the parties' intent to appeal. The defendants have advised this Court that they will seek an appeal. Upon consideration of the pleadings, the record, the evidence, and the argument of counsel, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The debtor, Metropolitan Electric Supply Corp. ("Metropolitan"), filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on June 29, 1992. Metropolitan acted as Debtor–in–Possession until its case was converted upon its own motion under 11 U.S.C. § 1112 to one under Chapter 7 on January 5, 1993. Harry Shaia, Jr. was appointed as the Chapter 7 Trustee.

Durrette, Irvin, Lemons & Bradshaw, P.C. ("Durrette") was, after proper application, appointed by order of this Court to serve as counsel to Metropolitan as a Chapter 11 debtor in possession. Raymond, Colesar, Glaspy & Huss, P.C. ("Raymond") was appointed by order of this Court to serve as accountant to Metropolitan. On January 27, 1993, which was after the conversion to Chapter 7, defendants Durrette and Raymond each filed applications for compensation and reimbursement of expenses incurred during the Chapter 11 case. These applications bore the caption "Final Application," but requested compensation "[p]ursuant to 11 U.S.C. Sections 330 and 331 and Federal Rule of Bankruptcy Procedure 2016." (Def.'s Applications of January 27, 1993.) Durrette requested $20,186.00 in fees and $3,192.26 in expenses for services rendered between October 21, 1992 through January 22, 1993. Raymond requested $650.00 in fees and $887.50 in expenses for services rendered between October 31, 1992 and December 30, 1992. Each defendant had also been allowed interim compensation for work performed prior to October of 1992.

No objections to the applications were filed, and after a hearing, this Court allowed the compensation to Durrette and Raymond as requested. The March 1, 1993 Orders granting the requests included the following language: "and it is further ORDERED that the Chapter 7 Trustee is authorized to pay such fees and expenses ... from funds remaining in the Debtor's estate." (Orders of March 1, 1993.) The Trustee, having determined that there then appeared to be sufficient funds of the estate with which to pay both the Chapter 11 and Chapter 7 administrative claims in full, paid the amounts allowed on March 1, 1993 by checks dated March 4, 1993. (Pl.'s Ex. B and C.)

The Trustee, on April 28, 1994, filed a "Motion to Approve Proposed Distribution to Creditors" with a Memorandum in Support. Notice was provided, and the notice stated that if no objection or request for a hearing was received within twenty days, an order in connection with the Trustee's motion would be presented to the Court for entry. No objection or request for a hearing was received, and on May 19, 1994 this Court entered an Order approving the Trustee's proposed distribution. The relevant language of that Order states that the Trustee shall:

a) Pay all allowed Chapter 7 Administrative Expenses in full or on a pro rata basis to the fullest extent possible without any subpriority between said creditors; b) If funds remain after the foregoing, pay all Chapter 11 Administrative expenses in full or on a pro rata basis to the fullest extent possible without any subpriority between said creditors.

(Order of May 19, 1994.) This distribution scheme anticipates payment of Chapter 7 administrative claims if there are sufficient funds to do so. After full payment of the Chapter 7 administrative expenses, any Chapter 11 administrative expenses will be paid either in full or pro rata from remaining funds in the estate.

It now appears that there will be sufficient funds remaining in the estate from which Chapter 7 administrative claims may be paid in full. However, there are not sufficient funds to pay the preceding Chapter 11 administrative expenses fully. Despite the Trustee's demand that the March 4, 1993 payments be returned to the estate, Durrette

and Raymond have refused to disgorge those payments.

## CONCLUSIONS OF LAW

■ Federal Rule of Civil Procedure 56(c), incorporated into the Bankruptcy Code by Bankruptcy Rule 7056, states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Determining materiality relies upon an examination of the relevant substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the present dispute, there is no genuine issue as to material fact. The facts not being in dispute, the parties are entitled to judgment as a matter of law. Here the Court is faced with a Chapter 11 case that was converted to a case under Chapter 7. Professional fees were incurred by Durrette and Raymond during the course of the Chapter 11, and after the case was converted, those professionals received Court approval of their compensation. The Order approving the compensation authorized the Chapter 7

Trustee to pay the Chapter 11 fees from funds remaining in the debtor's estate. The Trustee, believing that adequate funds would be available, paid the requested amounts. He later determined that the funds remaining in the estate would not be sufficient to pay both the Chapter 7 and Chapter 11 administrative expenses in full, and requested that Durrette and Raymond return the payments. The legal issue before this Court is whether a professional employed in a Chapter 11 case may be forced to disgorge compensation paid by Chapter 7 Trustee when insufficient funds remain in the estate to pay both the Chapter 7 and 11 expenses in full.

■ The Trustee argues that the payments made to Durrette and Raymond are property of the estate, and therefore must be turned over pursuant to 11 U.S.C. § 542.[1] This argument is, of course, true, but begs the question as to why the payments are property of the estate. If the payments (or overpayments, as the Trustee would have them called) to Durrette and Raymond are property of the estate, § 542 requires their return. Payments found to be in contradiction to the mandated priority scheme of 11 U.S.C. § 726, and therefore subject to disgorgement, should be considered property of the estate. It is difficult to adopt a contrary position; payments made by the Trustee that are subject to disgorgement must be property of the estate. Otherwise, disgorgement could never occur.

■ Even if this Court were to adopt the position that the March 1993 payments are not property of the estate, and thus are not controlled by § 542, 11 U.S.C. § 105 permits the Court to "issue any order, process or judgment that is necessary or appropriate" to carry out the mandates of the

1. The Court first notes that Title 11 of the United States Code has been amended by the Bankruptcy Reform Act of 1994. This case was filed in 1992, and converted in 1993. All citations to Code sections refer to the Code in its former version, as the amendments relevant to this Opinion only apply to those cases filed after October 22, 1994. Bankruptcy Reform Act of 1994 § 702, Pub.L. No. 103–394, 108 Stat. 4106 (1994). The relevant portion of Section 542 states that:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, *shall deliver to the trustee, and account for, such property or the value of such property,* unless such property is of inconsequential value or benefit to the estate. 11 U.S.C.A. § 542(a) (West 1993) (emphasis added).

Code. 11 U.S.C.A. § 105 (West 1993). The equitable powers of § 105 "encourage courts to be innovative, and even original" in applying the Code. *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.), *cert. denied* 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988). The equitable powers of § 105 are limited, however, by the intent and language of the Bankruptcy Code. *Id.* This Court does not propose to approach that limit here, and only seeks to implement the distribution scheme the Code intends through 11 U.S.C. § 726.

■ Section 726 mandates the distribution of the property of a Chapter 7 estate and the priority for payment of claims, including administrative expenses allowed under 11 U.S.C. § 503.[2]

> [I]n a case that has been converted to [Chapter 7] under section 1112[,] 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C.A. § 726(b) (West 1993). The rule provided by § 726(b) is thus a simple one. When a Chapter 11 case is converted to one under Chapter 7, the Chapter 7 administrative expenses have a priority of payment over the Chapter 11 administrative expenses. Once the Chapter 7 administrative expenses are paid in full, Chapter 11 administrative expenses are paid on a pro-rata basis if the estate cannot pay all Chapter 11 administrative expenses in full. Subordination of administrative expenses incurred prior to conversion to those incurred after conversion

provides professionals who participate in the Chapter 7 liquidation a greater assurance of payment, encouraging the participation of those professionals. The Trustee's distribution scheme does not stray from the statutory rule, and this Court's orders allowing the compensation were intended to allow the Trustee to make payments within the mandates of § 726(b).

Professionals employed in the bankruptcy arena are placed upon notice of the § 726(b) distribution scheme by holding themselves out as having a working knowledge of the Bankruptcy Code. In that light, a professional engaged to represent a Chapter 11 debtor receiving a payment for Chapter 11 administrative expenses before or after[3] the case has been converted to Chapter 7 is on notice that § 726(b) may require disgorgement of those premature payments if sufficient funds do not eventually remain in the estate from which all Chapter 7 and 11 administrative fees may be paid in full. Judge Teel, United States Bankruptcy Judge for the District of Columbia, has recently stated the rule well:

> Professional fees allowed pursuant to § 503(b) are distinct from administrative expenses paid by the trustee in the ordinary course of business pursuant to § 363(c)(1). Unlike professional fees, payments made by the trustee in the ordinary course are not subject to court approval, can be paid immediately and will not be subject to any pro rata reductions. Thus, the court need not be concerned that disgorgement of professional fees would render debtors unable to retain employees, hire service providers or maintain accounts on the basis that those entities would fear that the money they receive would be subject to disgorgement. *Professionals seeking compensation from the bankruptcy es-*

**2.** Section 503 provides for the allowance of administrative expenses after notice and a hearing. Allowable administrative expenses include compensation and reimbursement awarded under 11 U.S.C. 330(a). 11 U.S.C.A. 503(b)(2) (West 1993).

**3.** It is important to note that the complaint before the Court involves only a *request for disgorgement* of certain payments made by the Chapter 7 Trustee to the defendant Chapter 11 professionals after the conversion of the case.

This is not to say that under the appropriate circumstances, the Trustee would not be entitled to recover that portion of all prior interim compensation awards to the Chapter 11 professionals in order to reach an appropriate pro rata distribution among those professionals. The Trustee has not requested, and this Court does not now consider, the disgorgement of any interim awards of professional compensation made prior to conversion.

tate do so at the risk that the estate will not have sufficient funds to satisfy their claims. To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a "superpriority" status that is not mandated by the Code. *Guinee v. Toombs (In re Kearing )*, 170 B.R. 1, 7–8 (Bankr.D.Dist.Col.1994) (emphasis added, citations omitted). This Court adopts the holding and logic of the *In re Kearing* court.[4]

With regard to the many arguments made by Durrette and Raymond, the Court has carefully considered each. None of the positions taken by these defendants, however, gives the Court any rationale for ignoring the mandates of § 726(b). As a result, the Court finds no need to discuss in detail every legal theory raised by the defendants' memorandum. Some of the theories do merit discussion, however.

█ One of the arguments raised is that because the awards of compensation were made pursuant to applications denominated "final applications" for compensation, they were final orders made pursuant to 11 U.S.C. § 330[5] rather than mere "interim" awards made pursuant to 11 U.S.C. § 331[6]. The defendants' characterization of this Court's compensation Orders is simply not correct. The applications filed by Durrette and Ray-

mond were made pursuant to both § 330 and § 331. The March 1, 1993 Orders of this Court were made pursuant to those applications.

Section 331 permits professionals to apply for and receive periodic payments for services rendered, rather than having to wait until the end of a case. That, of course, is exactly what Durrette and Raymond asked for, and what this Court awarded. Rather than having to wait until the end of the case, the professionals requested and received an award, in which this Court authorized the Trustee, without ordering him to do so, to pay the compensation from funds remaining in the estate. It was this Court's intent in March of 1993 that any payments to be made by the Trustee were to comply with § 726(b), and it is this Court's intent that the statutory mandate be met now. Without the right to disgorge, the Trustee would defer payment of any compensation to professionals until the availability of funds was absolute, or until final distribution was made, circumventing the purpose of § 331.

The applications and resulting Orders of March 1993 are "final" only in the sense that they represent the last interim request of the Chapter 11 professionals. The denomination of those applications as "final" means, in this case, nothing more than that the probable

---

**4.** The Court notes that it is not the only court to have adopted the reasoning employed by Judge Teel. Several Courts have recently come to the conclusion that payment of administrative claims that would result in contradiction of the statutory scheme of 11 U.S.C. § 726 are subject to disgorgement. *See In re Kingston Turf Farms, Inc.*, 176 B.R. 308 (Bankr.D.R.I.1995) (Holding that disgorgement is required as a matter of law under § 726(b) to adhere to the mandatory payment scheme of the Code and to ensure that all creditors within the same class share pro-rata in the available pool of funds); *In re Lochmiller Indus.*, 178 B.R. 241 (Bankr.S.D.Cal.1995) (Holding that in light of clear priority afforded Chapter 7 administrative claims under § 726(b), Chapter 11 administrative claimants must bear the risk of nonpayment); *In re The Lighting Center, Inc.*, 178 B.R. 320 (Bankr.D.R.I.1995) (Where Chapter 11 administrative claimants will not receive 100% of their claims, disgorgement is a given).

**5.** Section 330 provides that the Court may award to a professional employed in a case:

[R]easonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title.

11 U.S.C.A. § 330(a)(1) (West 1993).

**6.** Section 331 provides that:

[A] debtor's attorney or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C.A. § 331 (West 1993).

intent of the applicants was to file no further requests for compensation arising out of the Chapter 11.[7] These requests were made after the conversion of the case to one under Chapter 7, however, and the professionals involved knew, or should have known, of the requirements of § 726(b).[8]

■ The defendants also argue that § 542 does not permit the Trustee to recover the payments because the Trustee has not shown that the payments are property that may be used, sold or leased by the Trustee under § 363. This argument borders on the absurd, given that this entire matter is based upon the Trustee's ability to use and distribute funds. The payments were, in essence, made in cash. The Trustee is entitled to "use" that cash to meet his statutory obligations. It is instead argued by the defendants that the controlling statutory section should be 11 U.S.C. § 549. Section 549, however, permits the Trustee to avoid postpetition transfers of property of the estate. Section 549 is clearly inapplicable here, given that the subject matter of this dispute is not an avoidable transfer, but a payment of requested compensation after application, notice, hearing, and authorization of the Court.

The Court also notes the defendants' arguments regarding judicial policy, waiver, equitable estoppel, and procedural due process. All of these arguments can be summed up by the defendants' position that it is somehow unfair for the Trustee to now request disgorgement of the March 1993 payments. This "unfairness" can be attributed to the length of time that has passed, the entry of ex parte orders that changed the distribution scheme [9], and the mistaken concept that the Orders granting the compensation were "final" in nature and were not appealed from by the Trustee.

If anything is "unfair" in this Court's view of this matter, it is that professionals who regularly appear before the Court would force the Trustee to seek a judicial resolution of this dispute when § 726(b) so clearly sets out the priority for payment of administrative claims. The Orders of this Court anticipated payment of the awarded compensation from funds remaining in the estate, in compliance with § 726(b). The payments made in excess of the amount due under § 726(b) are property of the estate, and must be returned pursuant to § 542.

Section 726(b) requires in this case that the Chapter 7 administrative claimants are to be paid in full from remaining estate assets. Once the Chapter 7 administrative claims have been paid in full, Chapter 11 administrative claims are to be paid. If they cannot be paid in full, the Chapter 11 claimants are to be paid on a pro rata basis. To the extent that Durrette and Raymond retain amounts in excess of that intended by § 726(b), they

---

7. If the debtor's counsel or accountant had done additional work which was compensable from assets of the estate, the Court would have given additional consideration to a subsequent request, irrespective of the "final" tenor of a previous fee order.

8. While the timing of the request for compensation and payment is of little consequence, the post-conversion request for the prior Chapter 11 expenses makes it clear that because the defendants knew the case had been converted to one under Chapter 7, they should have known of the priority scheme required by § 726(b) and the possibility of disgorgement.

9. During the administration of the Chapter 7 case and the review of claims by the Trustee, the Trustee objected to the claim of one Smith Beights Company ("Smith Beights"). In resolving the Trustee's objection, Smith Beights amended its proof of claim, and this Court ordered on February 28, 1994 that the amended proof of claim be allowed as an unsecured Chapter 11 administrative expense. (See Order of

February 28, 1994.) As a result, a claim originally filed as an unsecured priority claim was included within the class of Chapter 11 administrative claimants to which Durrette and Raymond belong. This added administrative expense has apparently caused the estate's inability to pay the Chapter 11 administrative claimants in full. The proper course of action if the defendants wish to contest the validity of any proof of claim is to object to it. The defendants have not, to this date, filed an objection to the Smith Beights claim. The defendants also failed to object to the Trustee's proposed distribution. Instead, the defendants sole course of action in this matter has been to file an answer to the Trustee's Complaint, and in turn, the current motion for summary judgment. The validity of this Court's Orders with regard to the Smith Beights claim and the Trustee's proposed distribution has not been properly challenged. Any disputes regarding those Orders are not currently before the Court.

512

are granting themselves a superpriority over other administrative claimants. While § 726(b) does not specifically permit the Court to require disgorgement, the authority for that action is found in 11 U.S.C. § 105. *In re Kearing,* 170 B.R. at 7.

In the interest of equity, however, this Court will not require Durrette and Raymond to refund the full amount of the March payments. They should, however, be required to return that portion of the March payments that would exceed their pro rata distribution. The amount of the pro rata distribution of each Chapter 11 administrative claim is to be calculated by the following formula:

$$\frac{(\text{TOTAL FUNDS BASE})}{(\text{TOTAL CLAIM BASE})} \times (\text{CLAIM AMOUNT}) = \text{PRO RATA DISTRIBUTION}$$

The numerator, or "TOTAL FUNDS BASE," is to be determined by adding the funds remaining in the hands of the Trustee to those that would be received if all prior professional fee awards arising from the Chapter 11 were disgorged. The denominator, or "TOTAL CLAIMS BASE," is to consist of claims for all fees previously awarded by this Court to Chapter 11 professionals as well as claims for all unpaid administrative expenses arising out of the Chapter 11 proceeding. The resulting fraction is to be multiplied by each claimant's "CLAIM AMOUNT" to determine the amount of the pro rata distribution that claimant will receive. The "CLAIM AMOUNT" is defined as the total amount of each Chapter 11 administrative claim. For the purpose of this calculation, the "CLAIM AMOUNT" of the administrative claim of a Chapter 11 professional shall be considered without regard to whether that claim was previously paid pursuant to a request for compensation, either before or after the conversion of the case. The recovery of the resulting "CLAIM AMOUNT" shall be offset by those funds already received and not disgorged.

 To the extent that the March 1993 payments received by Durrette and Raymond exceed their pro rata distribution amount, that excess should be refunded to the Trustee, and interest at the federal judgment rate should be due to the Trustee from Durrette and Raymond from the date of entry of this Memorandum Opinion and accompanying Order until payment of the amounts due. The Court will enter an Order conforming with this Memorandum Opinion.