**Joseph L. MATZ, Bruce Dopke, Benjamin L. Nortman, Holleb & Coff, Howard G. Kaplan, Arnold Lederman, and The Kaplan Brothers, Appellants,**

v.

**Daniel HOSEMAN, Trustee for the Karel Company, an Illinois corporation a/k/a Karel of Cumberland, and M. Scott Michel, United States Trustee for the Northern District of Illinois, Appellees.**

**No. 95 C 7377.**

United States District Court, N.D. Illinois, Eastern Division.

May 8, 1996.

---

Joseph L. Matz, Allan S. Brilliant, Harold David Israel, Holleb & Coff, Chicago, IL, for appellant Joseph Matz Holleb.

Max L. Chill, Steven Richard Radtke, Chill, Chill & Radtke, P.C., Chicago, IL, for appellee Daniel Hoseman.

Dean C. Harvalis, United States Trustee's Office, Chicago, IL, Richard Craig Friedman, Office of the United States Trustee, Chicago, IL, for appellee M. Scott Michel.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Appellants Joseph L. Matz, Bruce Dopke, Benjamin L. Nortman, and the law firm of Holleb & Coff (collectively "the Attorneys"), along with Howard G. Kaplan, Arnold Lederman, and The Kaplan Brothers (collectively "the Accountants"), bring this appeal from two orders issued by the bankruptcy court below. These orders directed the appellants to return certain fees paid to them for services they performed during a Chapter 11 reorganization. The appellants contend that the bankruptcy court did not have the authority to disgorge these fees, and that even if it did, the court erroneously refused to consider these payments as part of their previously authorized retainers. We have jurisdiction over these final orders, 28 U.S.C. § 158(a)(1), and now affirm.

### I. Background

On April 2, 1992, the Karel Company ("the debtor"), a manufacturer and distributor of furniture, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. At the time of filing, all of the debtor's assets, including its cash accounts, were encumbered by liens held by LaSalle National Bank ("LaSalle"). A002–004.[1] In exchange for permitting the debtor to utilize this cash collateral during its reorganization, and for providing the debtor with post-petition financing, LaSalle received a lien on all of the debtor's post-petition assets and cash accounts. In addition, LaSalle required the debtor to obtain prior approval from LaSalle before expending any of its funds. This agreement was approved by Bankruptcy Judge Schmetterer on April 6, 1992.

On May 27, 1992, the court authorized the employment of the Attorneys on behalf of the Official Committee of Unsecured Creditors (the "Committee"). A027–028. The Attorneys moved on June 1, 1992, for an order authorizing the payment of a $50,000 retainer from the debtor's assets, Supp.A.4,[2] and their request was granted the same day, A029–030.[3] On October 26, 1992, the Committee

---

1. We shall refer to specific pages in the appendix filed by the appellants as "A___." References to the appellees' supplemental appendix shall be denoted as "Supp.A. ___."

2. In this motion, the Attorneys stated that the entire $50,000 was subject to further court orders, and they "agree[d] to promptly repay any

such funds required to be disgorged by any final order of this court." Supp.A.4, at 2.

3. The court authorized $25,000 of this retainer to be deposited into the Attorneys' general account, while the remaining $25,000 would be held in a separate escrow account.

also received court approval to hire the Accountants and pay them a $15,000 retainer. A031–033.

At various stages during the Chapter 11 proceedings Appellants applied for and received interim compensation for their services under 11 U.S.C. § 331. First, in November 1992, the Attorneys filed their First Interim Fee Application for fees and expenses incurred from April 21 through September 30. The bankruptcy court allowed this application on December 28, 1992 authorizing the Attorneys to draw $33,008.19 from their retainer. A053–054. On February 11, 1993, the Accountants filed their First Interim Fee Application, and the Attorneys filed their Second Interim Fee Application. A071–077, A079–092. The former application was granted on April 22, 1993, in the amount of $45,885.60, A103–104,[4] and the latter was approved on March 8, 1993, in the amount of $11,946.30, A093–094. The Attorneys also supplemented their Second Interim Fee Application on March 22, 1993, A095–100, and the court approved the disbursement of $4536.50 to the Attorneys on April 22, 1993, A101–102. Finally, the Attorneys filed their Final Fee Application on November 15, 1993, which the court granted on December 22, 1993, in the amount of $10,804.92. A105–123.

In addition to these payments, the Attorneys also received $9500 from the debtor pursuant to a Twelfth Order Extending Final Financing Order ("Twelfth Order"), approved by the bankruptcy court on January 20, 1993. A061–070.[5] At the time this order was approved, the Attorneys apparently had no outstanding fee application pending, and had $16,991.81 remaining from the original $50,000 retainer. Nonetheless, the debtor trans-

ferred $9500 of its cash, which was collateral for LaSalle's financing, to the Attorneys.

Despite efforts at reorganization, the debtor's Chapter 11 bankruptcy case was converted into a Chapter 7 liquidation case on September 24, 1993. A203–204. Daniel Hoseman was appointed as case trustee for Karel ("Case Trustee"), and the matter was subsequently transferred to Bankruptcy Judge Wedoff. Upon reviewing the debtor's assets and liabilities, the Case Trustee concluded that there would only be enough funds in the estate to pay the two highest categories of claims: the administrative claims in the Chapter 7 proceeding, and the United States Trustee's Quarterly Chapter 11 fees. All other claims, including the administrative claims from the Chapter 11 proceeding (such as the Attorneys' and Accountants' fees), would not be paid in full, but would be paid on a pro rata basis. On September 11, 1995, the Case Trustee, with the support of the United States Trustee ("U.S. Trustee"), filed two motions to compel the Attorneys and the Accountants to return all fees and expenses paid to them during the Chapter 11 proceeding. The Case Trustee and the U.S. Trustee later modified their position, and conceded that any retainers paid to the appellants were not subject to disgorgement by the bankruptcy court.[6] Accordingly, they requested that the Attorneys and the Accountants return that portion of their fees which exceeded the amount authorized by the court as a retainer. In the case of the Attorneys this amounted to $9500, while for the Accountants the figure was $30,885.60.

Judge Wedoff held a hearing on the Case Trustee's motions on October 5, 1995. At

---

**4.** The court had previously granted the Accountants a partial award of $15,000, A077–078, which was applied toward this later award of $45,885.60.

**5.** Although the budget attached to the order allots only $9000 toward "Legal Fees/Creditors," A064, all sides agree that the Attorneys actually received $9500. Neither Appellants nor Appellees provide any explanation for this discrepancy.

**6.** We note that this limitation on the disgorgement of professional fees is not necessarily dictated by case law. See In re North Bay Tractor, Inc., 191 B.R. 186, 188 (Bankr.N.D.Cal.1996)

("[T]here is an argument that since the retainer is property of the estate the attorney must disgorge the retainer so that other claimants of equal priority receive equal dividends."); In re McDonald Bros. Constr., Inc., 114 B.R. 989, 999–1000 (Bankr.N.D.Ill.1990) (concluding that prepetition "security retainers" were property of the estate and subject to disgorgement). Rather, the Case Trustee and the U.S. Trustee conceded the non-disgorgability of retainers in the bankruptcy court, and do so again before us. Therefore, despite the existence of authority to the contrary, we will bind the appellees to this concession.

that time the appellants requested that the court delay ruling until they could obtain a transcript of the January 15, 1993 hearing before Bankruptcy Judge Schmetterer on the Twelfth Order. Appellants argued that the transcript would provide evidence that the $9500 payment to the Attorneys was actually a retainer, and therefore not subject to disgorgement. The court denied this motion and found that the $9500 payment was not a retainer. Accordingly, the court granted the Case Trustee's motions, and in two orders dated October 26, 1995, directed the appellants to disgorge the payments in question. The court also entered orders rendering the appellants' interim fees as final, and a timely notice of appeal followed.

## II. Standard of Review

■ We review the factual findings of the bankruptcy court for clear error, Fed. R.Bankr.P. 8013, and its legal conclusions de novo, *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994); *Aetna Bank v. Dvorak,* 176 B.R. 160, 163 (N.D.Ill.1994). A factual finding is not clearly erroneous if, viewing the evidentiary record in its entirety, the determination of the court was plausible, even if the reviewing court would have weighed the evidence differently as a trier of fact. *EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 309 (7th Cir.1988). A bankruptcy court's decision not to consider certain evidence is reviewed for an abuse of discretion. *In re Cash Currency Exchange, Inc.,* 93 B.R. 618, 621 (N.D.Ill.1988). We will find an abuse of discretion only "where no reasonable person could take the view of the trial court. If reasonable persons could differ, no abuse of discretion can be found." *INB Banking Co. v. Iron Peddlers, Inc.,* 993 F.2d 1291, 1293 (7th Cir.1993) (quotations omitted).

## III. Discussion

Appellants raise four arguments in this appeal: (1) that the bankruptcy court did not possess the authority to disgorge the interim fees at issue; (2) that only LaSalle, as the holder of a lien on the debtor's cash, had standing to recover the fees; (3) that the bankruptcy court erroneously concluded that the $9500 paid to the Attorneys was not part of their retainer; and (4) that the bankruptcy

judge should have deferred his ruling until seeing the transcript of the January 15, 1993 hearing before Bankruptcy Judge Schmetterer. We address each of these arguments in turn.

### A. Authority to Disgorge Interim Fees

■ The appellants contend that the bankruptcy court did not possess the authority to disgorge their fees, since the Code does not explicitly permit disgorgement upon the conversion of a Chapter 11 case to a Chapter 7 liquidation. Neither 11 U.S.C. § 726 (which sets out the payment priorities of creditors, and mandates a pro rata distribution of Chapter 11 administrative expenses if the estate does not have the wherewithal to pay the claims in full) nor § 330 (which allows for the final payment of professional fees) contains an express provision authorizing the disgorgement of professional fees. Appellants argue that because these provisions are the most likely candidates to contain a grant of power to disgorge interim fees, and neither one contains such language, Congress has indicated that trustees should not be permitted to take back fees paid to professionals. In addition, the appellants make several policy arguments attacking the wisdom of disgorgement.

■ We find none of these arguments persuasive. An award of interim fees by the bankruptcy court under § 331 is not final, *Brouwer v. Ancel & Dunlap (In re Firstmark Corp.),* 46 F.3d 653, 657–59 (7th Cir. 1995), and is subject to later review by the court, *In re Taxman Clothing Co.,* 49 F.3d 310, 312, 314 (7th Cir.1995) ("Remember that all awards of interim compensation are tentative, hence reviewable—and revisable—at the end of the case."). Thus, courts have uniformly permitted trustees and creditors to seek the return of funds paid to professionals employed in the bankruptcy proceeding. *E.g., United States Trustee v. Johnston,* 189 B.R. 676, 677–78 (N.D.Miss.1995) (holding that attorney's § 331 interim fee award during Chapter 11 portion of case could be subject to disgorgement in later Chapter 7 liquidation in order to effectuate priority scheme of § 726(b)); *Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan*

*Elec. Supply Corp.),* 185 B.R. 505, 508–10 (Bankr.E.D.Va.1995) (same); *In re Lochmiller Indus., Inc.,* 178 B.R. 241, 251–54 & n. 41 (Bankr.S.D.Cal.1995) (same) (collecting cases); *In re Kingston Turf Farms, Inc.,* 176 B.R. 308, 310 (Bankr.D.R.I.1995) (same); *Guinee v. Toombs (In re Kearing),* 170 B.R. 1, 7–8 (Bankr.D.D.C.1994) (same); *see In re Taxman Clothing Co.,* 49 F.3d at 316 (ordering attorney for trustee to return over $70,-000 in fees previously awarded under § 331). Regardless of whether this authority stems from 11 U.S.C. § 105, which empowers the court to "issue any order, process or judgment that is necessary or appropriate to carry out [the Bankruptcy Code]," *see Metropolitan Elec. Supply Corp.,* 185 B.R. at 508–09, or is simply an inherent power of the court in its effort to effectuate the distribution scheme outlined by § 726(b), *see Johnston,* 189 B.R. at 677, it is without cavil that the bankruptcy court has the power to disgorge interim professional fees.

■ The appellants next argue that the Case Trustee cannot recover the fees at issue because § 549(a) of the Code only permits "the trustee [to] avoid a transfer of property of the estate ... that is not authorized ... by the court." Because the interim fees in this case were made pursuant to a valid court order, they argue, § 549(a) precludes their recovery. Although Appellants are correct in their assertion that § 549(a) does not provide for the recovery of assets of the estate which are transferred pursuant to a court order, it does not follow that the Case Trustee is therefore precluded from disgorging the interim fees in this case. Appellants have cited no authority for the proposition that § 549(a) applies to the payment of professional compensation in a Chapter 11 case, and we can see no grounds for finding the provision germane to the instant controversy. Indeed, out of the numerous provisions in the Code which refer to § 549, none of them relates to the payment of administrative fees. *See, e.g.,* 11 U.S.C. §§ 303(b), 349(b), 502(d). Simply put, "Section 549 is clearly inapplicable here, given that the subject matter of this dispute is not an avoidable transfer, but a

payment of requested compensation after application, notice, hearing, and authorization of the Court." *In re Metropolitan Elec. Corp.,* 185 B.R. at 511.[7]

■ Finally, the Appellants argue that if professional fees such as theirs are subject to disgorgement, then high quality attorneys and accountants will decline to work in the bankruptcy area for fear of not being compensated. However, this argument ignores the fact that professionals engaged in the bankruptcy field are presumed to have knowledge of the priority scheme of § 726(b), and therefore are on notice of the potential for disgorgement should the estate be unable to pay all of its administrative expenses. *In re Metropolitan Elec. Supply Corp.,* 185 B.R. at 509. In other words, "[p]rofessionals seeking compensation from the bankruptcy estate do so at the risk that the estate will not have sufficient funds to satisfy their claims. To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code." *In re Kearing,* 170 B.R. at 7–8; *see In re Lochmiller Indus., Inc.,* 178 B.R. at 253–54 (rejecting argument that disgorgement of only professional fees and not ordinary course expenses was inequitable, based on professionals' better information about the ability of the debtor to survive Chapter 11). Contrary to the appellants' assumptions about the effect of disgorgement on the market for bankruptcy professionals, disgorgement is already a part of the bankruptcy landscape and has been adequately accounted for by professionals. *See* G. Ray Warner, *Interim Fee Awards and Routine Holdback,* 13 Am.Bankr.Inst.J. 21, 21 (May 1994) (advocating disgorgement over holding back fees to protect against overpayment of interim fees).

We therefore conclude that the bankruptcy court acted within the scope of its authority when it disgorged the interim fees paid to Appellants.

---

7. Moreover, even if § 549(a) had any applicability to interim fees, in this case it would actually authorize the disgorgement of Appellants' fees, since the ruling by Bankruptcy Judge Wedoff effectively rendered the transfers "not authorized ... by the court."

### B. Recoverability of LaSalle's Cash Collateral

■ The Attorneys and Accountants next argue that this proceeding should be dismissed because any recovery of their fees by the Case Trustee will enure to the benefit of LaSalle, a secured creditor, and not the estate. The appellants posit that because their fees and expenses were paid out of LaSalle's cash collateral, LaSalle still retains a superior interest in these funds. Because LaSalle will benefit from any disgorgement of their fees, they contend that the Case Trustee does not possess the statutory authority to pursue these claims. *See Congress Credit Corp. v. AJC Int'l*, 186 B.R. 555, 559–60 (D.P.R.1995) (dismissing adversary proceeding based on "overwhelming evidence" that any recovery by trustee would not benefit estate). However, it is by no means clear that LaSalle still holds a lien on the interim payments made to the appellants, especially since LaSalle authorized the disbursement of these funds. Both the Case Trustee and the U.S. Trustee assert that the recovered funds will be applied on a pro rata basis to all the Chapter 11 administrative creditors, and this is the assumption under which the bankruptcy court proceeded. In any event LaSalle has not intervened in this matter, or made any indication that it will try to recover these funds should the Case Trustee be successful. *Cf. Congress Credit Corp.*, 186 B.R. at 559 (dismissing proceeding in part because secured creditor "emphasize[d] repeatedly that it ha[d] a legal right to the proceeds acquired by the Trustee in the adversary proceedings"). Accordingly, we conclude that the Case Trustee is entitled to proceed in this action against the Attorneys and the Accountants, notwithstanding the fact that the interim fees in question were paid out from LaSalle's cash collateral.[8]

### C. $9500 Payment to Attorneys

■ The final argument by the Attorneys—the Accountants raise no further claims of error aside from those discussed above—is that the bankruptcy court erred in its factual determination that the $9500 interim payment in the Twelfth Order did not constitute part of their retainer. If this payment was considered a retainer, the Attorneys argue, it would not be subject to disgorgement because of the concessions made by the Case Trustee and the U.S. Trustee.[9] However, to prevail on this argument, the appellants must demonstrate that the bankruptcy judge's finding was clearly erroneous—i.e., that it was an implausible conclusion given the entire record. This they cannot do.

It is undisputed that on June 1, 1992, the Attorneys were granted a $50,000 retainer by the bankruptcy court, and that the Accountants were granted a $15,000 retainer later that year. Both of these payments were labeled "retainers" by the movants and the court. However, no such language was used in the motion for the interim payment of $9500, and the Twelfth Order makes no reference to the fees as a retainer. True, it appears that at the time of the Twelfth Order the Attorneys were not owed any money, and the original $50,000 retainer had been reduced to just under $17,000. Nonetheless, Bankruptcy Judge Wedoff concluded that had Judge Schmetterer intended to supplement the original retainer with another $9500, he would have indicated this in the Twelfth Order. Because there is no suggestion in the Twelfth Order that this payment was a retainer, as there was in the prior orders, the court found that the payment was not a retainer. Given the record as a whole, this finding by the bankruptcy court was not clearly erroneous. Regardless of whether we would have weighed the evidence differ-

---

8. Appellants also make the fleeting suggestion that because their interim fees were "carved-out" of LaSalle's cash collateral, they should be treated just like retainers and not subject to disgorgement. However, it appears that this argument has been waived, as it was never advanced below, *In re Kroner*, 953 F.2d 317, 319 (7th Cir. 1992), and the appellants fail to cite any authority to support their position, *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1212 (7th

Cir.1993). In any event, as discussed above, *supra* note 6, the characterization of an interim fee payment as a "retainer" does not magically protect it from disgorgement; rather, it is only because the Case Trustee and the U.S. Trustee concede the argument that we consider retainers non-disgorgable in this case.

9. *See supra* note 6.

ently and reached a different conclusion, we cannot say that the finding of the bankruptcy court amounted to clear error.

■ Appellants also argue that Bankruptcy Judge Wedoff should have delayed ruling on the Appellees' motions until a transcript from the hearing on the Twelfth Order was available. After considering the language of the 1992 retainer orders and the Twelfth Order authorizing the $9500 payment, Bankruptcy Judge Wedoff concluded that the transcript would be of little value given that the Twelfth Order failed to contain any language indicating that the payment was a retainer.[10] Considering all of the evidence before the bankruptcy court at that time, we cannot say that this decision constituted an abuse of discretion. In any event, because the 1992 transcript is thoroughly ambiguous as to the nature of the $9500 payment, A057–58, any error in not considering it was harmless. Fed.R.Bank.P. 9005 (incorporating Fed.R.Civ.P. 61 harmless error standard); Fed.R.Evid. 103(a); *see Carmel v. River Bank America (In re FBN Food Servs., Inc.)*, 185 B.R. 265, 274 (N.D.Ill. 1995).

### IV. Conclusion

For the reasons set forth above, we affirm the two bankruptcy court orders directing the appellants to disgorge part of their fees. It is so ordered.

---

**10.** Mr. Matz: Can we see what the transcript shows that Judge Schmetterer said as to the 9,500?

The Court: I suppose, but here is the problem, Judge Schmetterer is an extremely careful judge. I would expect if he wanted to enter an order increasing the amount of the retainer that was afforded to Holleb and Coff that he would have entered an order to that effect. I looked at the [Twelfth Order] and there is

plainly nothing in that order that says anything about a retainer.

Mr. Matz: I am aware of that. I really want to get past it, too, because I want to argue the question of disgorgement. I want to argue it very seriously, not so much because of this case because it is going to cost Holleb and Coff far more than $9,500 worth of time, but we want to argue the principle....

