## In re PENN STATE CLOTHING CORPORATION, Debtor.

### Bankruptcy No. 92–16361DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 8, 1997.

Andrew N. Schwartz, Trustee, Philadelphia, PA.

Louis Hockman, Snitow & Snitow, Philadelphia, PA, for Trustee.

David C. Shuter, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for Debtor.

Kenneth F. Carobus, Philadelphia, PA, for Creditors' Committee & Ernst & Young.

Leslie B. Gaynus, Philadelphia, PA, for PA Dept. of Labor & Industry.

Prince Altee Thomas, Philadelphia, PA, for PA. Dept. of Revenue.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

■ Our instant task is to determine the proper distribution among creditors, particularly Chapter 11 professionals and other administrative creditors, in this bankruptcy case, filed under Chapter 11 on October 16, 1992; in which a plan was confirmed on August 5, 1993; but which was converted to a Chapter 7 case on February 4, 1994. For the most part, we sustain the principles articulated by the United States Trustee ("the USTE") that (1) only Chapter 7 administrative claims are entitled to priority; (2) only unpaid Chapter 11 administrative claimants filing claims by the bar date may receive a distribution; and (3) in that distribution, they must share pro rata with other timely-filed unsecured claims. We do agree with an objecting Chapter 11 claimant that, while payments to Chapter 11 claimants pursuant to previously-confirmed Chapter 11 case need not be disgorged, allowances to such claimants should be calculated on the basis of their total claims, and payments previously received by them should be deducted from their shares of their total claims before making any further distributions to them.

## B. PROCEDURAL AND FACTUAL SETTING

We are unable to make, with sufficient certainty, any statements as to precisely what fee applications were allowed and how much was paid on account of these applications to each of the professionals employed by the Debtor and the official creditors' committee during the Chapter 11 phase of this case. Andrew Schwartz, Esquire, the case trustee ("the Trustee"), presumably has these figures at his disposal, as administration was delayed for him to verify same. We would therefore only add the possibility of error and confusion if we attempted to make specific mathematical findings and calculations. We will direct the Trustee to do so on the basis of his records in accordance with our following legal conclusions.

However, it is clear that some, if not most, of the Chapter 11 professionals were paid a significant portion of the fees awarded to them during the Chapter 11 phase of this case. The objecting creditor, Ernst & Young, the accountant for the Creditors' Committee ("the Objector"), was paid a significantly smaller portion of its fees awarded to it during the Chapter 11 phase than the other professionals, perhaps nothing.

The Trustee collected sufficient funds to pay the Chapter 7 administrative claims in full and make some further distributions. He proposed to allow the Chapter 11 claimants which were already paid to retain their payments and to distribute what remained to the unpaid balances of the Chapter 11 professionals and other administrative and priority claimants *pro rata.*

The Objector did not request disgorgement from any parties, including the Chapter 11 professionals which had been paid. However, it did contend that the entire claim of the paid professionals should be utilized as the basis on which the *pro rata* shares of the professionals would be determined, rather than utilizing the net balances due, as the Trustee had proposed. The Objector's formula would result in a distribution in which Chapter 11 professionals who had been paid a substantial portion of their compensation awards would receive nothing or at least less of the funds remaining in the hands of the Trustee than claimants which were paid a lesser amount of the compensation allowed to them, or were unpaid, like the Objector.

This court requested that the USTE attend the second continued Final Audit hear-

ing in this case on December 17, 1996, at which the Objector's position was aired, to obtain her office's input regarding this dispute. After a colloquy which did not provide us with sufficient information to make an immediate determination, all of the proposed distributees under the Trustee's proposal were given an opportunity to make a written submission to us supporting their respective positions on or before January 3, 1997, and the USTE was requested to make such a submission.

The USTE and the Objector made submissions prior to the January 3, 1997, deadline. The USTE noted that *In re Benjamin Coal Co.*, 978 F.2d 823, 826–27 (3d Cir.1992), held that confirmation discharged the administrative priority of Chapter 11 administrative claims and rendered such claims, in a distribution after a conversion to Chapter 7, as unsecured claims which had to be filed on or before the Chapter 7 claims bar date to support a distribution. She also argued that disgorgement of administrative claim payments pursuant to the terms of a confirmed plan was inappropriate, citing *In re Erie Hilton Joint Venture*, 157 B.R. 244, 246 (Bankr.W.D.Pa.1993); and *In re Nardulli & Sons Co.*, 66 B.R. 871, 881 (Bankr.W.D.Pa. 1986), *rev'd on other grounds*, 836 F.2d 184 (3d Cir.1988). Finally, she noted that the Trustee must provide a priority in distribution to taxing authorities whose priorities were retained after the conversion to Chapter 7 under the Code.

The Objector cited principally *In re North Bay Tractor, Inc.*, 191 B.R. 186, 187–88 (Bankr.N.D.Cal.1996); and *In re Metropolitan Electric Supply Corp.*, 185 B.R. 505, 512 (Bankr.E.D.Va.1995), for the principle that distribution to the Chapter 11 administrative claimants should be as equal as possible in accordance with the total claim base for such claims. The Objector reiterated that it did not request any Chapter 11 claimants to disgorge payments. It merely sought to adjust the distribution of the remaining funds by taking into account the payments already made to certain Chapter 11 professionals.

The Trustee filed a responsive submission suggesting, without any case authority, that his originally proposed distribution was prop-er and that adoption of the USTE's position would require a complete recomputation of the distribution, further delaying administration of this case. The Trustee expressed uncertainty as to which tax claims would be entitled to priority under the reasoning of *Benjamin Coal.* However, the Trustee took up the USTE's *Benjamin Coal*-based argument to note that the Objector had failed to file a proof of claim and hence would for that reason receive no distribution under the USTE's proposal.

## C. DISCUSSION

We appreciate the fact that the Objector would have fared better under the Trustee's distribution scheme than under the proposal of the USTE, the latter of which was apparently triggered only by the Objector's dissatisfaction with the Trustee's proposed distribution. We also regret causing further delay in a case in which distribution has been protracted by a combination of factors separate and apart from the present controversy. However, our primary aim must be to get the distribution right under the applicable controlling law as we understand it.

The Bankruptcy Code does not appear to provide any direct assistance to us in this endeavor. The only Code provision which appears at all relevant is 11 U.S.C. § 726(b), which provides, in pertinent part, as follows:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter [7] under section ... 1112, ... of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion. . . .

This statute provides only that Chapter 7 administrative claims have priority over all other claims. Most courts agree that a Chapter 7 trustee may seek disgorgement of

interim fees paid to Chapter 11 professionals, if not from other post-petition ordinary course payees, if the estate funds are insufficient to pay the Chapter 7 administrative costs. *See, e.g., Matz v. Hoseman,* 197 B.R. 635, 639–41 (N.D.Ill.1996); *United States Trustee v. Johnston,* 189 B.R. 676, 677–78 (N.D.Miss.1995); *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 460–61 (Bankr. M.D.Pa.1996) (disgorgement required only to the extent that a retainer is found unreasonable); *Metropolitan Electric, supra,* 185 B.R. at 508–11; *In re Lochmiller Industries, Inc.,* 178 B.R. 241, 247–50 (Bankr.S.D.Cal.1995); and *In re Kearing,* 170 B.R. 1, 3–8 (Bankr. D.D.C.1994).

Here, however, there are sufficient funds available to pay all Chapter 7 administrative claims in this case. *Compare In re Vernon Sand & Gravel, Inc.,* 109 B.R. 255 (Bankr. N.D.Ohio 1989) (no disgorgement ordered merely to equalize the distribution among Chapter 11 claimants, although further interim advances to Chapter 11 professionals will be disallowed). Also, in each of the foregoing cases, Chapter 11 plans were not confirmed prior to conversion to Chapter 7, as here.

■ In the instant circumstances, featuring confirmation of the Debtor's Chapter 11 plan, *Benjamin Coal* is clearly applicable controlling law. We must follow where it leads, even if it is down a path that none of the active interested parties are anxious to go. Under *Benjamin Coal* the unpaid Chapter 11 administrative claims lose their priority upon conversion. 978 F.2d at 826–27. Moreover, such claims cannot be paid at all if proofs of the claims have not been filed by the respective claimants on or before the Chapter 7 claims bar date. *Id.* at 826. *Cf. In re Fashion Spear, Inc.,* 15 B.R. 137, 140 (Bankr.W.D.Pa.1981) (reaches same conclusions under the Bankruptcy Act).

Without reviewing the tax claims themselves, we are unable to assist the Trustee in determining which and how much of these claims remain entitled to a priority in a Chapter 7 distribution. We do note that the tax claims are modest in size and may not justify any objection unless the classifications requested in these claims are patently incorrect in a Chapter 7 case.

This disposition is not beneficial to the interests of the Objector. As the Trustee observed, it appears that the Objector has failed to file a timely proof of claim, which may cut off its right to any distribution under the reasoning of *Benjamin Coal.* Furthermore, we note that the principles set down in *North Bay Tractor* and *Metropolitan Electric,* which the Objector cites, may be inapplicable here. Neither of these cases involved a confirmed plan. As the authorities cited by the USTE, as well as other authorities, *see In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562, 564 (Bankr. M.D.N.C.1986); and *Fashion Spear, supra,* 15 B.R. at 139–40, have consistently held, distributions made to Chapter 11 professionals pursuant to confirmed plans cannot be recovered. *Cf. In re Wilson,* 1993 WL 78214, at \*1 (Bankr.E.D.Pa. March 15, 1993), *aff'd,* 1993 WL 483326 (E.D.Pa. Nov. 16, 1993); *In re B. Cohen & Sons Caterers, Inc.,* 147 B.R. 369, 374–79 (Bankr.E.D.Pa.1992); and *In re Sturm,* 121 B.R. 443, 449–50 (Bankr.E.D.Pa. 1990) (erroneous distributions can only be undone in the presence of strong equities in favor of doing so).

■ We do believe, however, that the Objector was correct in its original contention that the bases of the claims of administrative claimants should be the total amounts of their claims, not the unpaid balances. We believe that *North Bay Tractor* and *Metropolitan Electric* made good points and that the absence of confirmation in those cases is only relevant to the potential right of the Trustee to obtain disgorgement from the Chapter 11 professional claimants already paid, not the method for determining the distribution of unpaid claims arising in the Chapter 11 phase of the case. The Objector was, moreover, not requesting disgorgement. However, given its failure to file a claim and the significance of this failure to its rights under the *Benjamin Coal* principles unleashed by the Objector's dissention, its victory on this point is a Pyrrhic one.

We must therefore direct the Trustee to revise the proposed disposition in accordance with the principles and timetable set forth

herein. We recognize that this timetable is tentative, in that it will have to be set back if the new proposed distribution requires the Trustee to object to claims the amount and classification of which were immaterial under his earlier proposed distributions, and/or if other pleadings are filed by other interested parties in light of this decision, *e.g.*, motions to file late claims under the principles articulated in *Pioneer Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 387–95, 113 S.Ct. 1489, 1494–98, 123 L.Ed.2d 74 (1993); *In re Pennsylvania Truck Lines, Inc.*, 189 B.R. 331, 335–37 (Bankr.E.D.Pa. 1995); and *In re Sacred Heart Hospital of Norristown*, 186 B.R. 891, 894–98 (Bankr. E.D.Pa.1995). We will require the Trustee to file and serve any necessary objections and any other interested parties to file and serve any other pleadings which they deem appropriate in light of this Opinion by January 21, 1997. If no such filings are made, the Trustee shall file and serve a further amended proposed distribution by January 24, 1997, and require objections thereto to be filed and served by January 31, 1997.

*D. CONCLUSION*

An order consistent with the result reached in the foregoing Opinion will be entered.

### ORDER

AND NOW, this 8th day of January, 1997, after a colloquy with interested counsel at a second continued Final Audit hearing of December 17, 1996, in light of the proposed distribution proffered at that hearing by Andrew N. Schwartz, Esquire ("the Trustee"), and upon consideration of the post-hearing submissions by several interested parties, it is hereby ORDERED AND DECREED as follows:

1. The Trustee or his counsel shall file any necessary objections to claims and any interested parties shall file and serve any motions deemed appropriate as a result of the foregoing Opinions on or before JANUARY 21, 1997.

2. If no objections or other pleadings are filed and served in accordance with paragraph 1, the Trustee or his counsel shall file any necessary amended proposed distribution order consistent with the foregoing Opinion, and *serve a certification of such filing upon the United States Trustee and the court in chambers,* on or before JANUARY 24, 1997.

3. If the Trustee makes the filing pursuant to paragraph 2, any objections to the proposed amended distribution order shall be filed and served on or before JANUARY 31, 1997.

4. In the event an Order for distribution is entered shortly thereafter, the Trustee or his counsel shall thereafter file, *and serve a Certification of such filing upon the court in chambers,* the cancelled checks and zero bank statement; or an affidavit, pertaining to disbursements made pursuant to the Order of Final Distribution, setting, forth that there is a zero balance in the account and that the cancelled checks are no longer available on or before JULY 1, 1997.

5. If pleadings are filed and served pursuant to paragraph 1, this court shall enter a subsequent order revising paragraphs 2, 3, and 4.